JOHN LALLY, Respondent, v. THOMAS CANTWELL, Appellant.

St. Louis Court of Appeals, March 18, 1890.

1. **Apprentices:** CUSTOM. The apprenticeship of a minor is not valid or binding, unless made by indenture pursuant to the requirements of the statute. And a custom of otherwise apprenticing minors, being contrary to the positive mandate of the statute, is illegal.

2. **Damages.** When a person is held liable for wrongfully and maliciously procuring the discharge of a servant by his master, the measure of damages is the same as in the case of a suit by the servant against the master for a wrongful discharge.

3. ———: BURDEN OF PROOF. The burden of proving in such case, in mitigation of damages, what the servant earned or could have earned during the period of time in question, is on the defendant. And proof that the servant secured other employment during such period, without any evidence as to what was earned by him, *held* not to entitle the defendant to complain that the jury did not make sufficient allowance for such earnings in their verdict.

4. **Practice, Appellate.** When a cause has been once appealed and, being remanded, is tried in accordance with the opinion of the appellate court, error cannot be assigned of the rulings of the trial court in so doing, the decision of the appellate court being *res adjudicata*.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

Lally v. Cantwell.

*Rowe & Morris*, for the appellant.

*Frank A. C. McManus*, for the respondent.

ROMBAUER, P. J., delivered the opinion of the court.

This is an action for maliciously interfering with the plaintiff's business by the publication of a false and malicious libel, whereby the plaintiff was deprived of employment, and hindered in his employment and trade as a plumber. The petition, which is very inartificially drawn, was demurred to by the defendant as stating no cause of action, and the demurrer was sustained by the trial court. The plaintiff thereupon appealed to this court and we reversed the judgment, holding that the petition did state a cause of action, in alleging malice on part of defendant and injury to plaintiff as a direct consequence of the defendant's malicious act, and that the facts thus stated, according to the weight of authority both here and in England, gave to the party injured a cause of action. The case upon its former appeal is reported, 30 Mo. App. 524, where the plaintiff's petition, being the same petition on which the case was ultimately tried, is set out in full.

The libelous publication, which is claimed to constitute the malicious interference, consisted of a printed circular which the defendant sent to a number of master plumbers in the city of St. Louis, and which was in the following words:

"John Lally, an apprentice in my shop, not out of his time, quit work without cause on August 1. If he is working for you now, or applies for work, you will understand the situation. Article eleven of the by-laws covers the case."

The defendant filed an answer after the cause was remanded for trial, which, after admitting the publication of the circular above set out, denied that it was false and malicious, and set up affirmatively "that before the publication of said circular, to-wit, on July

31, 1887, John Lally was an apprentice in the employ of this defendant, and that he quit work without cause on August 1, 1887. Wherefore defendant says that the words written in said circular are true in substance and in fact.''

Upon the pleadings thus framed, the parties went to trial before a jury, and the plaintiff recovered judgment for nine hundred dollars, three hundred dollars of which was, according to the verdict of the jury, for compensatory, and six hundred dollars for exemplary, damages. The defendant assigns for error that the plaintiff failed to make out a *prima facie* case; that the court misdirected the jury, and that the damages both compensatory and exemplary are excessive.

Whether the plaintiff made out a *prima facie* case depends, in the present state of the record, solely on the fact whether he has by proof substantiated the allegations of the petition. If so, we cannot put the trial court in the wrong for refusing defendant's demurrer to the evidence, as we have formerly adjudged that the petition does state a cause of action, and that decision under well-settled rules governing appellate procedure is the law of this case. The publication was admitted. It appeared in evidence that, when the plaintiff quit the defendant's employ, he was a minor, and had been working for the defendant under an oral contract of employment; that he was never bound by any indenture as required by sections 4081, 4082 and 4083 of the Revised Statutes of 1879, then in force. The first of these sections provides that no minor shall be bound as an apprentice, unless by an indenture of two parts, and the last section provides that ''all indentures, entered into otherwise than as herein provided, shall be, as to all apprentices under age, utterly void.'' It, therefore, conclusively appeared that the circular was false, both in stating that the defendant was an apprentice in the defendant's shop, and that he had quit work without cause (*i. e.*, wrongfully). As

Lally v. Cantwell.

the plaintiff was not apprenticed by indenture, he was not an apprentice under the laws of this state, and, as 'no valid contract existed between himself and the defendant, he might rightfully quit the employment at any time.

On the question of malice, the plaintiff adduced the following evidence: The defendant, after the discharge of the plaintiff by Killoren, sent these circulars to other master plumbers of the city. The plaintiff's mother and sister called upon the defendant to remonstrate with him. The mother testified as to what passed between herself and the defendant as follows: ' I introduced myself to Mr. Cantwell; he didn't know me, and I told him I had come to get him to let my son alone, and he asked me 'how he was getting along.' I said, ' well, if you would let him alone.' 'No, I won't,' he says, ' He has got to come back and obey me, for he has to do it; for, in the city of St. Louis, I won't allow him to work, no, nor in the United States, if I should wish; but out of St. Louis I will let him alone. Why I should have issued those circulars before, as Mr. Able,—Graham and Peters had advised me to do so, but I thought he was playing ball. Why, no plumber should hire him, none should hire him, not in the city of St. Louis.' And I begged of Mr. Cantwell and stated our circumstances to him, that he was the principal support of a young family. He said 'he didn't care, that he would have to come back and obey him,' and I asked him for how long; he was then over five years working, working at the trade, but not with Mr. Cantwell, he was then twenty-one years. He said it would make no difference if it was forty,—the words he used, he would have to come back and obey him, Says I, ' You will not let him alone?' 'No,' he says, ' not in the city of St. Louis;' he has got to come back and obey him. "

The sister testified on the same subject: " When mamma saw Mr. Cantwell she said, ' I come to see, Mr.

Cantwell, if you won't leave Johnny alone? He is doing very well,—he was doing very well until he received those circulars, and he is thinking of going away, and I can't let him go, and I want to know if you won't let him alone. He said, 'No, I won't;' he said, 'Johnny has a stiff neck and it needs bending, and it will take me to bend it. He will have to come back and obey me;' and three times, distinctly, he repeated that he would have to come back and obey him."

The plaintiff himself testified on the same subject: "I told Mr. Cantwell that I was working for Mr. Killoren, and that he had received this notice, and that I could go back to work for him if he would let me, if he would grant me a permission, and he told me that he wouldn't do anything of the kind; that I had to work for him or leave the city. I asked him why he done that, as he had no claim on me. He said, 'All right if I haven't, you will either work for me or leave the city.' I told him if he would let me alone, I could get work at the business, but otherwise I could not."

The foregoing observations will suffice to show, that there was ample evidence before the jury to show express malice, and a malicious interference with plaintiff's work, and as there was proof that the circular was both false and malicious, and interfered with the plaintiff's employment, the plaintiff had, under the rulings of this court, when the case was last here, made out a *prima facie* case, because he had substantiated the allegations of his petition by proof.

This is not simply an action of libel as the defendant seems to contend, but, even if it were to be governed by rules applicable to actions of libel, the defendant would have no reason to complain of the court's instructions. The court told the jury in its instructions that, if the plaintiff was an apprentice under the custom of plumbers, and quit before the expiration of his term as apprentice, without any cause, the jury should find for the defendant, unless they should further find that

defendant was moved by express malice in sending out the circulars. In thus instructing the jury the court went further in defendant's favor than the evidence warranted. There can be no apprenticeship by custom in derogation of the positive mandate of a statute, which is one of public policy. When the statute says that all contracts of apprenticeship, except by indenture, shall be void, it necessarily expressly prohibits an apprenticeship by custom. Before the jury under this instruction could find for the plaintiff, they were bound to find express malice, even though, as above seen, the facts that the statements of the circular were false appeared by the conceded facts as a conclusion of law.

It is needless for us to discuss, whether or no, under the provisions of section 14 of article 2 of the Constitution of Missouri, and under section 2081 of the Revised Statutes of 1889, as the defendant claims, the truth of a publication is a complete defense in a civil action for defamation, since, as above seen, there was no legal evidence in this case tending to show the truth of the publication.

This brings us to the question of damages. We are aware of no rule of law, which would authorize us to review the amount of exemplary damages awarded, unless the award is so grossly excessive as to clearly indicate prejudice, partiality or corruption on the part of the jury. In Munter v. Bande, 1 Mo. App. 485, this court refused to disturb a verdict of one thousand dollars which necessarily consisted almost wholly of exemplary damages, as the actual injury inflicted was but nominal. Hence we do not feel at liberty to disturb the jury's discretion in this case in awarding the sum of six hundred dollars as exemplary damages.

The question of compensatory damages, however, is subject to review. The action as above seen is one of malicious interference with the plaintiff's employment by a defamatory publication. The plaintiff gave

evidence tending to show that, but for such interference, he would have secured employment with his then employer, for one year at nine dollars per week, making an aggregate of four hundred and sixty-eight dollars per annum. *Prima facie*, this sum was a proper measure of damages, as the case seems to fall within the class fixing damages in cases of wrongful discharge of the servant by the master. The measure of damages in those cases is the contract price, although the master may recoup the damages by showing that the servant either earned, or by reasonable exertion might have earned, money in other employment during the contract period. Wood on Master and Servant [2 Ed.] pp. 245, 246; *Koenigkraemer v. Glass Co.*, 24 Mo. App. 124; *Miller v. Boot and Shoe Co.*, 26 Mo. App. 57. But the burden of proof in recouping the damages is upon the master. Nor is the servant in such cases confined to the damages which have accrued up to the institution of the suit, or even up to the day of trial, as the defendant's counsel erroneously supposes, where the damages are of a continuing character. *Miller v. Boot and Shoe Co.*, *supra*. Now, in the case at bar, there was some evidence that the plaintiff did, during the year after he was discharged by Killoren, obtain employment for four months in the state of Arkansas, and for various periods, not designated, in the city of St. Louis, but there was no evidence what the plaintiff earned in these employments, and certainly no evidence tending to show that he earned more than one hundred and sixty-eight dollars. Thus it will appear that the trial court could not determine by any evidence adduced on the part of defendant, recouping the *prima facie* measure of plaintiff's damages, that the damages awarded by way of compensation were excessive, and we are equally at a loss to do so.

This disposes of all the errors assigned by the defendant. We conclude that neither of them are well assigned and affirm the judgment. All the judges concurring, it is so ordered.

ROMBAUER, P. J., also delivered the following opinion of the court, upon the motion of the appellant to set aside judgment and transfer the cause to the supreme court.

We are asked to set aside the judgment herein, and to transfer the cause to the supreme court, because it involves the construction of the constitution of this state.

We held, upon a full examination of the record, that there was no evidence tending to show that the defamatory publication was true, but that, on the contrary, it conclusively appears from the testimony of the defendant as well as that of the plaintiff that it was not true. The defendant in his motion fails to point out any part of the record tending to show that the publication was true. Under these circumstances we see no foundation whatever for the claim now advanced that the cause involves a construction of the constitution of this state.

All the judges concurring, the motion is overruled.