### AMERICAN TRADING CO. v. STEELE.

(Circuit Court of Appeals, Ninth Circuit. August 1, 1921.)

No. 3585.

1. **Parties ⬅21—Defendant corporation held properly named as interested party.**

In an action for breach of a contract of employment, defendant's claim that it was a different entity from a corporation of the same name, with which plaintiff's original contract was made, *held* without merit, where the contract was authorized by the defendant through its vice president, and both corporations recognized plaintiff's employment.

2. **Master and servant ⬅7—Contract of employment held modified by subsequent agreement.**

Where plaintiff's contract was for employment as a chief accountant at defendant's Shanghai office, a later contract for plaintiff's temporary employment at defendant's Tokyo office *held* a modification of the original contract, leaving the parties subject to all consistent conditions of the original contract, including a clause providing that the contract was conditioned on plaintiff's work being efficient and satisfactory.

3. **Courts ⬅365—Decision of state court as to construction of employment contract followed.**

Where a contract for employment was entered into in California, but was to be performed at Shanghai, and its construction was to be governed by law of California, decisions of courts of that state, if they have spoken, are binding on the federal court.

4. **Master and servant ⬅55—"Efficient and satisfactory" service construed.**

A contract under which plaintiff was to perform the duties of a chief accountant in an "efficient and satisfactory" way *held* not to mean that the work must be done to the satisfaction of the employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Efficient; Satisfactory.]

5. **Appeal and error ⬅342(1)—Breach of contract held question of fact, not reviewable.**

The District Court's finding that an employee had not breached his contract, which contained a clause that he was to perform in satisfactory way, was one of fact, which the Circuit Court of Appeals will not disturb, where the evidence tended to support such finding.

6. **Pleading ⬅166—Plaintiff held not required to answer defendant's allegations.**

Under Carter's Ann. Code Civ. Proc. Alaska, § 69, as adopted by Act June 6, 1900, providing that defendant may have judgment on the pleadings, if plaintiff fails to reply to new matter in the answer, it is essential that the new matter be material and constitute a defense, and where the practical issue is already tendered by complaint and answer, it cannot be material; hence, where plaintiff alleged that he was wrong-

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fully discharged, it was not necessary that the reply to defendant's allegation that plaintiff was inefficient and insubordinate, and performed his work unsatisfactorily.

7. **Arbitration and award ☞57—Award held not to bar suit.**

In an action for breach of an employment contract, an arbitrator's award, which was not definite and did not adjust the matters referred for arbitration, *held* not to bar the employee's action, since an award is void unless sufficiently definite and exact, so that nothing further remains to fix the rights and obligations of the parties under the submission.

8. **Master and servant ☞41(1)—Measure of damages for breach of contract.**

Where scarcely a year of a three-year contract for plaintiff's services as chief accountant had expired when his action for breach was instituted, the measure of damages was prima facie the contract earnings subject to recoupment on the part of defendant.

9. **Master and servant ☞42(1)—Reduction of damages for breach of contract not required.**

Where plaintiff's three-year contract for employment as chief accountant at Shanghai was breached in less than a year, plaintiff was not required to reduce his damages by accepting employment as a bookkeeper, which would injuriously affect his future career, nor was he under obligation to go to America for the purpose of finding employment.

10. **Appeal and error ☞842(11)—Finding as to mitigation of damages a question of fact, and conclusive.**

In an action for breach of an employment contract, the finding of the District Court on the question of mitigation of damages was one of fact for that court, and conclusive on the Circuit Court of Appeals.

11. **Master and servant ☞41(6)—Employer has burden of showing other employment.**

In an action for breach of a contract of employment, the burden was upon the defendant employer to show that the employee might with reasonable effort have obtained employment elsewhere.

12. **Appeal and error ☞173(11)—Appellant cannot claim set-off where claim not made in trial court.**

In an action for breach of an employment contract, defendant cannot on appeal insist that the trial court failed to give credit for a sum admitted to be due from plaintiff where defendant claimed no such amount in its answer as a set-off or counterclaim and the trial court's finding as to the amount plaintiff was entitled to recover being supported by evidence.

13. **Appeal and error ☞1047(1)—Trial ☞93—Defendant entitled to ruling as to admissibility of evidence but failure to make ruling not vital unless incompetent evidence admitted.**

Although defendant was entitled to the ruling of the trial court at some stage of the proceeding touching the admissibility of certain testimony, so that it might have the opportunity of reserving exceptions, the mere failure to make such rulings is not vital, unless the court did in fact admit incompetent and irrelevant testimony.

14. **Appeal and error ☞1047(1)—Reservation of rulings as to admissibility of evidence, until final findings, held harmless.**

In an action for breach of an employment contract, the trial court's reservation until final findings, of rulings touching the admissibility of plaintiff's testimony as to character and efficiency of his services, objection being based on the proposition that plaintiff was subject to dismissal in pursuance of defendant's independent judgment, *held* harmless, where such proposition is found to be unsound and the testimony consequently admissible.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the United States Court for China; Charles L. Lobingier, Judge.

Action by A. T. Steele against the American Trading Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action to recover damages for breach of a contract of employment. The contract is embraced by a letter, addressed to Steele, the defendant in error (plaintiff below), as follows:

"San Francisco, Cal., May 27, 1918.

"Mr. A. Tilton Steele—Present.

"Dear Sir: Confirming the writer's conversations with you during the past few days, we have employed you as follows:

"Position.—Chief accountant of our Shanghai office, the duties of which office you are to take up as quickly as possible, proceeding herefrom for Shanghai within about 30 days.

"Duration of Employment.—Three years from July 1st next, or earlier if the time of your departure from San Francisco for Shanghai hereunder be earlier. Should you not leave San Francisco for Shanghai hereunder prior to July 1st next, your salary will commence on July 1st.

"Compensation.—Two hundred and fifty ($250.00) dollars U. S. gold per month for the first year, and for the second and third year adjustments of salary to be made at the end of the first and second year, as may be mutually agreed; your compensation, however, not to be less than ten thousand ($10,-000.00) dollars for the entire period of three (3) years.

"Satisfactory Service.—The undertakings herein contained on our part are all conditioned upon your doing your work in an efficient and satisfactory way.

"Transportation to Shanghai.—In addition to salary as herein provided, we will provide you with first-class transportation to Shanghai.

"Bond.—It is a condition of your employment that you give any bond the company may require, the company paying the premium thereon.

"Yours truly,

"American Trading Company (Pacific Coast),
"Louis A. Ward, Vice President and Manager.

"Confirmed and accepted.                    A. Tilton Steele."

While on his voyage to Shanghai, plaintiff was intercepted by cablegrams from Tokyo by the American Trading Company, notifying him that there was a probability of his being required in the Tokyo office for a few months before going to Shanghai, and to be prepared to leave the ship at Yokohama. Plaintiff conformed to the instruction. On his arrival in Tokyo he received this further letter:

"Tokyo, Aug. 27, 1918.

"A Tilton Steele, Esq.—Present.

"Dear Sir: We beg to confirm our conversation of yesterday's date with reference to your temporary employment in this office.

"Compensation.—The compensation provided for in your original contract, made with Mr. L. A. Ward, vice president and manager of the American Trading Company of the Pacific Coast on May 27th, calls for a salary of $250.00 gold per month, or a salary of not less than $10,000.00 gold for the three years' period of your contract. We have arranged that you are to receive $250.00 gold at exchange 50, which is the equivalent of yen 500.00 per month, together with an additional allowance of yen 150.00 per month to cover any additional expenses which you may be put to, owing to the change in your plans. The two items above mentioned will make a total of yen 650.00 per month, which you will receive while you are in the employ of our Tokyo office.

"Term of Employment.—As explained to you, we wish you to remain in Tokyo during the time that Mr. Boyd is absent on holiday, which we estimate will be about six months. This time will, of course, apply on your three years' term as mentioned in your original contract.

"Traveling Expenses.—Any legitimate traveling expenses incurred by you on behalf of the company will be refunded to you.

"General.—It is understood between us that this temporary arrangement does not prejudice any verbal understanding which you may have had with Mr. Ward or with Mr. Burns prior to your departure from San Francisco.

"We remain, dear sir, yours very truly,

American Trading Company,

"D. H. Blake, Vice President."

Plaintiff at once entered into the service of the American Trading Company as accountant, and while in such service he received the following letter:

"Tokyo, March 19, 1919.

"A. Tilton Steele, Esq., American Trading Co., Tokyo—Dear Sir: With reference to our conversation of a few days ago, we beg to confirm what we told you at that time, to the effect that we had received word from Mr. Burns, agent of our Shanghai office, that, as he had made satisfactory arrangements with Mr. Manley to remain with the company, he did not want you to come to Shanghai.

"We also confirm our statement that, as soon as Mr. Boyd returns to his position in Tokyo, probably about the end of April, we shall have no further use for your services here.

"We cannot say what your recourse will be under your contract, but, as intimated the other day, the writer will be glad to render you such assistance as he can in order to effect a mutually satisfactory settlement; but before anything can be done in this connection it will be necessary for you to make some suggestions in the premises.

"We remain, yours very truly,     American Trading Company,

"D. H. Blake, Vice President."

As required, plaintiff quit the service about May 3, 1919. Claiming that the defendant breached its contract by his wrongful dismissal from its service, plaintiff seeks by this action to recover damages in the amount of the balance due him as salary to the end of his term of employment.

The defendant, by its amended answer, sets up that it is a Maine corporation, and an altogether different entity from the American Trading Company (Pacific Coast), with which plaintiff's contract for services was made; that the controversy has been settled by an award under an agreement for arbitration; and, by the tenth paragraph thereof: "That the alleged services rendered by the plaintiff herein to the defendant were neither satisfactory nor efficient, as required in the contract alleged in plaintiff's petition, * * * and that the said plaintiff in the performance of his alleged duties was inefficient, negligent, and insubordinate to his superiors."

The cause was tried to the court, and determined in favor of plaintiff by written opinion, without the rendition of a verdict, either general or special.

Fleming, Davies & Bryan, of Shanghai, China, and Garret W. McEnerney, of San Francisco, Cal., for plaintiff in error.

Chickering & Gregory and Donald Y. Lamont, all of San Francisco, Cal., and Jernigan, Fessenden & Rose, of Shanghai, China, for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). It will hardly be questioned that the decision of the court is tantamount to a general verdict upon the facts, and it will be so treated in our consideration of the controversy.

[1] The first question presented relates to whether the action is against the real party to the contract. The testimony shows that the

American Trading Company (Pacific Coast), with an office in San Francisco, is a Virginia corporation, and that the American Trading Company, with offices at Tokyo and Shanghai, is a Maine corporation. Louis A. Ward was vice president and manager of the American Trading Company (Pacific Coast). D. H. Blake was vice president of the American Trading Company, with office at Tokyo. W. A. Burns was agent of\American Trading Company at Shanghai. It is further in evidence that the American Trading Company (Pacific Coast) was authorized by the defendant company, through one Sutcliff, vice president at New York, to enter into the contract with plaintiff for his services at Shanghai, and the contract was entered into in pursuance thereof. This is confirmed by the testimony of Mr. Burns, the agent at Shanghai. Furthermore, the contract has been treated as that of the American Trading Company, with offices at Tokyo and Shanghai. It will be noted that Steele was employed as "chief accountant of *our* Shanghai office," and Blake, in his letter of March 19, 1919, speaks of Burns, agent of "our Shanghai office." Further, Mr. Blake says, in his statement delivered to Mr. Potter, the arbitrator, "Mr. Steele was originally employed on behalf of our Shanghai office.". So both the San Francisco and the Tokyo office recognized the employment of Steele for the Shanghai office, and it could make little difference whether he was employed by the one office or the other; he was employed for the Shanghai office, with the authority of the central office at New York, and the company represented at Shanghai is responsible under the contract. Defendant is therefore properly named as the interested party.

[2] A question is presented respecting the effect the contract of August 27th has upon the original contract. We construe this as a modification of the original contract, to govern while plaintiff was engaged for the Tokyo office, leaving the parties subject to all the conditions of the original contract not inconsistent therewith or repugnant thereto. The clause, therefore, pertaining to "satisfactory" service, as follows:

"The undertakings herein contained on our part are all conditioned upon your doing your work in an efficient and satisfactory way"

—was operative and binding in Tokyo, as well as in Shanghai. It is insisted by counsel for defendant that the legal effect of the clause is to accord to defendant the right and authority to exercise its independent judgment respecting whether plaintiff's services were unsatisfactory or inefficient, and that it could discharge him at its pleasure.

[3] The contract having been entered into in California, its construction would be governed by what the courts there have determined, if they have spoken on the subject. If they have not, then this court will exercise its judgment in the premises. The latest utterance of the Supreme Court of California having a bearing upon the subject is that of Tiffany v. Pacific Sewer Pipe Co., 180 Cal. 700, 182 Pac. 428, 6 A. L. R. 1493. The defendant in that case was engaged in the manufacture of brick, and plaintiff was employed by him as an "expert glazeman" for a term of three years. The contract contained

a clause to the effect that the plaintiff would not hold the company liable in case, for any reason, the company was unable to turn out enameled and glazed brick in quantities equal to the then present quality and satisfactory to the company. The court concluded in its holding that—

"The addition of the phrase, 'and satisfactory to the Pacific Sewer Pipe Company,' implied a complete satisfaction, and authorized the defendant to reject the brick or discharge Tiffany under the terms of the contract, if for any reason of any character the quality or quantity of the product was not satisfactory. We think the contract falls within the rule applicable to cases where the judgment of the promisor is involved, and that his decision that he is not satisfied is conclusive on the other party and upon the court to which the question is presented."

The court distinguishes some other cases previously decided by it, but cites none that was deemed to settle the specific question.

There seems to be a practical concurrence of opinion that, in contracts involving matters of fancy, taste, or judgment, when one party agrees to perform to the satisfaction of the other, he renders the other party sole judge of such satisfaction, without regard to the justice or reasonableness of his decision, and a court or jury cannot say that the party should have been satisfied where he asserts that he is not. 13 Corpus Juris, 675. See, also, 9 Cyc. 618, 619. Apt illustrations of the subject-matter of the kind of contract within the rule are given in Cyc., as, for instance, a suit of clothes, a bust of defendant's husband, a set of artificial teeth, and the like.

The case of American Music Stores v. Kussel, 232 Fed. 306, 146 C. C. A. 354, L. R. A. 1916F, 882, cited by counsel, is also illustrative, where the contract was to perform services to the satisfaction of the employer. Many cases are cited, and the contracts involved are practically all specific in the stipulation that the service or the thing to be done is to be to the satisfaction of the employer.

There is another line of authorities which seem to hold that a contract to do work, not involving personal taste or feeling, to the satisfaction of the adversary party, means that the work must be so done that the adversary party, if a reasonable man, would be satisfied therewith. 3 Page on Contracts, § 1390. But, after all, the true meaning of the contract is one for construction, depending upon the nature and character of the thing stipulated to be done, as well as the chief purpose the parties had in mind, to accomplish the end designed.

"Where," says the court in Frary v. American Rubber Co., 52 Minn. 264, 53 N. W. 1156, 18 L. R. A. 644, "the chief thing the parties have had in mind was to effect some definite purpose or end, of the performance of which others could judge just as well as the parties could, and which involved no considerations strictly personal, the stipulation that it should be done to the satisfaction of the party has been generally held not to be controlling."

To a like purpose, see McNeil v. Armstrong, 81 Fed. 943, 27 C. C. A. 16, where the distinction is characterized between the two classes of cases.

[4, 5] In the case at bar the employment was conditioned upon the work being done "in an efficient and satisfactory way"—not to the satisfaction of the employer. The services to be performed were those of an accountant. They were not of a character personal to the employ-

er, unless made so by apt stipulation; nor were they addressed to the judgment of a particular person or to the employer solely. They were such, considering the end to be accomplished, that others could as well judge of the character of performance as the employer. The expression "efficient and satisfactory way" is by no means the equivalent of "satisfactory to the employer," and, if the parties had desired that the latter meaning should be incorporated in the contract, it would have taken but a stroke of the pen so to express it. That not having been done, we must take it that the plain meaning of the expression used was the one intended. The trial court was therefore not in error in its construction of this clause in the contract. Its finding that plaintiff has not breached the contract in the light of this clause is one of fact, which it is not in the province of this court to disturb; the evidence being such as tends to support it.

Defendant further insists that it was entitled to judgment dismissing the action, upon the pleadings, in pursuance of its motion to that effect. The motion was interposed after the plaintiff had put in his evidence. The ruling of the court was reserved until final consideration, but the motion was eventually denied.

[6] It is urged that section 69 of the Alaska Code, as adopted by Act of Congress of June 6, 1900 (31 Stat. 343), is applicable for determining the question presented. But conceding, without deciding, that the Alaska Code is controlling in the United States Court for China, we are of the opinion that plaintiff is not precluded by his failure to reply to the tenth paragraph of the answer. The plaintiff in his complaint alleges that defendant "wrongfully, improperly, and without cause or reason, on or about March 17, 1919, dismissed and discharged the plaintiff," and thereby breached its contract of employment with plaintiff.

Paragraph 10 of the answer alleges that the services rendered by plaintiff "were neither satisfactory nor efficient, as required in the contract, * * * and that the said plaintiff in the performance of his alleged duties was inefficient, negligent and insubordinate to his superiors." By the provision of section 69, supra, the defendant is entitled to judgment on the pleadings, if the plaintiff fails to reply to new matter in the answer constituting a defense. Upon principle, it is essential that the new matter be material and constitute a defense to the action set up by the complaint. If the practical issue were already tendered by the complaint and answer, then, of course, it could not be material, because it would be tantamount to a presentation of the same issue twice.

Under the contract, as we have construed it, the defendant had the right to discharge plaintiff for inefficiency, or for having done his work in an unsatisfactory way, and even, it may be, for insubordination. But when plaintiff alleged that he was wrongfully and improperly discharged, without cause or reason, he opened the way for defendant to show to the contrary, to the very extent that plaintiff was inefficient and insurbordinate, and that he did his work in an unsatisfactory manner, so there was no need of further presentation of the issue in the pleadings. Watkinds v. Southern Pac. R. Co. (D. C.) 38

Fed. 711, 4 L. R. A. 239; Persse v. Gaffney, 23 Colo. 245, 47 Pac. 293; Dueber v. Wolfe, 47 Wash. 634, 92 Pac. 455; Muskogee Vitrified Brick Co. v. Napier, 34 Okl. 618, 126 Pac. 792.

This disposes of the question on a legal assumption most favorable to the defendant; but it is doubtful whether a reply is required at all under the practice prevailing in the China court. The trial court was of the view that it is not so required. We do not have access to the rules. The provisions of section 5 of the act creating a United States Court for China, however, lend color to the view. 34 Stat. 814, 816 (Comp. St. § 7691).

[7] The next question presented relates to the alleged arbitration. Is it a bar to plaintiff's recovery? The agreement for submission is singularly brief. It is:

"We, the undersigned, agree to the arbitration of our differences by the Honorable Mr. Potter."

This makes it necessary that we examine the negotiations of the parties looking to the arbitration, to ascertain what their differences were, and what was to be submitted for adjustment.

By plaintiff's letter to Blake of May 2, 1919, it is specifically stated that the "award must be considered as binding to both parties in the matter of the main issue involved in the case, viz. the amount of compensation to be paid to me at the Tokyo office of the company in full settlement of all my claims against the company under the two agreements I have with the company." Blake, by his letter of even date in response to plaintiff's letter, practically conforms to the latter's proposition, and concludes "that his award should be binding on both parties, and shall be settled in Tokyo." The controversy submitted thereon was the amount of compensation to be paid plaintiff in full settlement of all his claims against the company under the two agreements between the parties. Each party submitted to the arbitrator a statement of the case. The arbitrator by his decision found:

First, "that the matter of the three-year contract should be referred to Mr. Ward in San Francisco for settlement;" and, second, "that Mr. Blake should pay Mr. Steele in full, until such time as Mr. Steele can secure first-class passage back to San Francisco, less any indebtedness that may be proved that Mr. Steele owes Mr. Blake."

It is at once obvious that the award decides nothing as to compensation to which Steele was entitled under the original agreement. It leaves wholly unadjusted the differences arising at the Tokyo office, and awards Steele nothing except payment in full up to the time he could secure passage back to San Francisco, less any indebtedness he owed to Blake.

There is nothing definite in either finding; nor is there any adjustment or settlement of the matters referred for arbitration. In other words, the award settles practically nothing of the controversy submitted by the parties for adjustment. The disposition under the award must be sufficiently definite and exact that nothing further remains to fix the rights and obligations of the parties under the submission, and that the party against whom it is made can perform or pay it without further ascertainment of rights or duties; otherwise,

it is void. 5 Corpus Juris, 139. The award of the arbitrator is therefore not a bar to the present action.

A further question is presented touching the measure of damages to be applied in a case like this. Scarcely a year of the three-year contractual period had expired when the action was instituted, and it is contended, on the one hand, that the measure of recovery should be limited to the period of time intervening between the date of discharge and the date of trial; while, on the other, it is urged that the measure of relief is compensation at the contract rate for the entire unexpired period of the term, with deduction of any amount the plaintiff has otherwise earned in the meantime.

Judicial opinion is not in accord upon whether an action can be presently maintained on a contract of the kind for damages arising on account of the unexpired portion of the term, but the weight of authority undoubtedly sustains the right of action. The action is not one upon the contract to recover wages or salary, but for a breach of the contract, which has for its remedy the damages sustained by a repudiation of the contractual relations (Roehm v. Horst, 178 U. S. 1, 20 Sup. Ct. 780, 44 L. Ed. 953), and the question turns upon the correct measure of damages to which the employee is entitled.

In Pierce v. Tennessee Coal, etc., Railroad Co., 173 U. S. 1, 16, 19 Sup. Ct. 335, 341 (43 L. Ed. 591), in which a contract somewhat similar, though not the counterpart of this, was involved, the court says:

The party suing "would simply recover the value of the contract to him at the time of the breach, including all the damages, past or future, resulting from the total breach of the contract," and, further, "in assessing the plaintiff's damages, deduction should, of course, be made of any sum that the plaintiff might have earned in the past or might earn in the future."

The court in this case approves the language employed in East Tennessee, etc., Railroad v. Staub, 7 Lea (Tenn.) 397, as follows:

"But the rule of damages in such cases is what would have come to the plaintiff under the contract had it continued, less whatever the plaintiff might earn by the exercise of reasonable and proper diligence on his part; and, of course, in ascertaining this, we must look to a time subsequent to the breach, and in some cases to a time subsequent to the bringing of the suit."

The court in Roehm v. Horst, supra, quotes an expression of an English court, in Hochster v. De La Tour, 2 El. & Bl. 678, as follows:

"In either case [referring to the time when the right of action accrued], the jury in assessing the damages would be justified in looking to all that had happened, or was likely to happen, to increase or mitigate the loss of the plaintiff down to the day of trial."

The English case, like that at bar, was one of employment. The action was really begun prior to the commencement of the term of employment; the defendant having declined to avail himself of plaintiff's services, and having repudiated the contract. The Roehm Case was one for the purchase of hops, and there was a repudiation of the contract prior to the stipulated time for delivery of certain quantities of the hops. The court held that an action would lie at once upon the breach for damages for failure to perform.

American China Development Co. v. Boyd (C. C.) 148 Fed. 258, is a case of employment, and the court held, following the authorities above referred to and others cited, that the action would lie, although instituted prior to the expiration of the term, and that the plaintiff was entitled to recover prospective damages consisting of the contract price unpaid, in the absence of proof by defendant that plaintiff might have obtained other employment.

The Supreme Court of California declares the rule, as approved by a number of authorities cited, to be as stated in Lally v. Cantwell, 40 Mo. App. 50, namely:

"The measure of damages is the contract price, although the master may recoup the damages by showing that the servant either earned, or by reasonable exertion might have earned, money in other employment during the contract period." Seymour v. Oelrichs, 156 Cal. 782, 802, 106 Pac. 88, 97 (134 Am. St. Rep. 154).

[8] However, the rule approved as stated in the headnote of the case is that the measure of damages is prima facie the contract earnings subject to recoupment on the part of defendant as stated in the Missouri case. This, we are impelled to believe, is the better rule respecting the measure of damages in a case like this. By plaintiff's testimony it appears that he endeavored to secure employment of the nature of the service he was to render for defendant in the Orient, and was unable to secure any such. In this connection, he said:

"I could get many a position as bookkeeper, but not as a chief accountant. Lots of positions as bookkeeper are vacant here."

He further asserted that, to accept a position inferior to chief accountant would serve to injure his likelihood of obtaining that for which he was fitted, and therefore that he did not feel justified in embarking upon a subordinate or indifferent calling.

[9] It is insisted that he could have gone back to America and obtained the employment he desired. The court below weighed the evidence, and stated its view thus:

"We cannot think that a party, whose contract has been broken, is obliged, in order to reduce his adversary's damages, to accept employment which would affect injuriously his own future career."

[10, 11] In this we concur; and the court might with propriety have gone further, and declared that the plaintiff was under no obligation to go to America for the purpose of finding employment such as he had been required to relinquish, in order to diminish the damages sought against his adversary. Suffice it to say, however, that the question of mitigation of damages was one of fact for the court under the evidence, and its findings are conclusive. It should be noted, also, that in view of the Boyd Case, supra, the burden was cast upon the defendant to show that plaintiff might, with reasonable effort, have obtained employment elsewhere, and if it failed in its substantiation of the fact it cannot complain.

[12] As another ground of error, defendant insists that the court failed to give it credit for the sum of $507 (Mexican), which it is urged plaintiff admitted to be due defendant. Defendant has claimed no such

amount in its answer, as a set-off or counterclaim to plaintiff's demands, and the finding of the court in its conclusion as to the amount which plaintiff is entitled to recover, there being evidence to support it, precludes further inquiry here.

[13] Error is also predicated upon the court's reservation of its rulings touching the admissibility of certain testimony until it made its final findings. The defendant was entitled to the ruling of the court at some stage of the proceeding, so that it might have the opportunity of reserving its exceptions; for, if the court based its findings upon incompetent or irrelevant testimony, it would be subject to reversal. The mere failure to make the rulings, in our opinion, would not be vital, unless the court did in fact admit incompetent and irrelevant testimony.

[14] There are but two assignments of error insisted upon in defendant's briefs respecting the admission of testimony. These both relate to plaintiff's testifying to the character and efficiency of his services rendered while working for the defendant, and the objection urged is based upon the proposition that plaintiff was subject to dismissal in pursuance of defendant's independent judgment. We have found the proposition to be unsound, and it follows that the testimony was admissible, so the defendant has not been injured by the action of the court in reserving its rulings.

Appellee's motion to dismiss the writ of error is without merit.

Finding no reversible error in the record, the judgment is affirmed.

---

⬦⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes