WARREN v. UNITED STATES.

No. 1246.

District Court, D. Massachusetts.

Feb. 10, 1948.

Harry Kisloff, of Boston, Mass, for libelant.

William T. McCarthy, U. S. Atty., Gerald McCarthy, and Edward O. Gourdin, Asst. U. S. Attys., and Thomas H. Walsh, all of Boston, Mass., for respondent.

WYZANSKI, District Judge.

The question at issue is for how long shall the operator of a vessel be obliged to pay maintenance and wages to a seaman who fell sick during the voyage but who recovered in a foreign port before the end of the voyage?

Libellant, a married man, joined the vessel in Boston as its second mate on December 1, 1944, for a voyage beginning December 8, 1944, which came to an end March 29, 1945. His maintenance was worth $5.25 a day, and his wages averaged $13.43 a day. On December 30, 1944, having been paid to that date, he left the vessel in Cowes, England, on account of sickness incurred on the voyage. By February 1, 1945, he was well and looking for a job in England. It does not appear that any job was available. Libellant was then brought at respondent's expense to Boston, the port from which he had originally sailed. He arrived there February 25, 1945; and it does not appear that he looked for a job thereafter. He claims that he was ill on his arrival but, particularly in the light of the fact that libellant did not report in Boston to a hospital or doctor, I find that he was well and able to work.

The question is whether he is entitled to maintenance and wages from December 31 to (a) February 1, the date he was well, or (b) February 25, the day he returned to Boston, or (c) March 29, the day that the vessel ended its voyage.

There are loose statements in the books that a seaman who falls sick during a voyage is entitled to wages at least until the end of the voyage [The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760] and to maintenance for a reasonable time thereafter. [Calmar S. S. Corporation v. Taylor, 303 U.S. 525, 530, 58 S.Ct. 651, 82 L.Ed. 993. Compare Pacific S. S. Co. v. Peterson, 278 U.S. 130, 134, 49 S.Ct. 75, 73 L.Ed. 220; Muise v. Abbott, 1 Cir., 160 F.2d 590, 592]. But those statements were not made in cases where the seaman had recovered before the end of the voyage, and therefore are not decisive of the issue here.

838

■ The right to recover wages, maintenance and cure arises ex contractu. The obligation of the owner-operator is "a material ingredient in the compensation for the labor and services of the seamen". Harden v. Gordon, 11 Fed.Cas. pages 480, 481, No. 6,047, 2 Mason 541. The period of time which that obligation covers requires some discrimination of statement. So far as concerns wages, the obligation lasts for the shorter of the two following periods: (1) until the end of the voyage [Jones v. Waterman S. S. Corporation, 3 Cir., 155 F.2d 992, 995] or (2) until the time when the seaman is not only well but able to find suitable employment. So far as concerns maintenance, the obligation lasts for the shorter of the two following periods: (1) until a reasonable time for medical attention, even though that time is beyond the end of the voyage [Calmar S.S. Corporation v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993], or (2), until the time when the seaman is not only well but able to find suitable employment.

No explanation is required of the two clauses numbered (1) in the last paragraph. However, a word needs to be said about the obligation stated in the two clauses numbered (2). The obligation may run beyond the time the seaman is physically well and until he can get suitable employment. The seaman's contract assures him (subject to certain conditions not here material) of protection during the period of actual illness and the subsequent period of looking for a suitable job—provided, of course, in the case of wages that those periods do not extend beyond the end of the voyage and in the case of maintenance that those periods do not extend beyond a reasonable time for medical treatment. The reason is that the seaman ought not to be left in the lurch during the period of time that he has been assured a job. This is important in all kinds of employment where the employee has a promise of a job for a fixed period. It is particularly important for a seaman who may be stranded in a foreign port. And it is consistent with the rationale of the contract that the seaman's right may extend beyond the point when he is completely well. It may include a space of time when he is looking for suitable employment or when he is returning home to look for and secure such employment.

■■ It will be observed that the form of statement used in the preceding paragraph implies that the amount of recovery of a seaman who has been sick and recuperates is measured by the usual principles of contract law with respect to mitigation of damages. In short, since the seaman's right is a species of the generic right of obligees of employment contracts, he like other promisees of employment contracts is entitled to recover only such losses of wages, board and lodging as in the exercise of due diligence he could not avoid. If during the contract period, that is during the term of the voyage, he obtains or by diligence could have obtained other suitable employment, his damages are diminished by the amount which he receives or should receive in such employment. Restatement, Contracts § 336 comment (d); Restatement, Torts, § 455 comment (d); Williston, Contracts §§ 1358, 1359. Pierce v. Tennessee Coal & Railroad Co., 173 U. S. 1, 16, 19 S.Ct. 335, 43 L.Ed. 591.

This principle of avoidance of damages in cases like the case at bar seems to have been recognized at least by Judge Neterer. Halvorsen v. United States, D.C.W.D. Wash., 284 F. 285; La Merced,[1] (W.D. Wash). Judge Campbell appears in two cases to have taken a contrary view and to have allowed a seaman to recover wages to the end of the voyage although the seaman was able to travel and, it might have been contended, to look for and secure another job in his home port. Stephen O'Byrne's case and Anton Goryanz's case each against The William Penn.[1] (E.D. N.Y.). Perhaps, however, that contention was not made by counsel or explicitly supported by the record of testimony in those cases.

■ As applied to the evidence in the case at bar the principle of avoidance of damages presents some difficulty. I am not prepared to say that when the libel-

[1] No opinion for publication.

lant made application for work at Cowes, England, on February 1, 1945, a suitable job was available there—even if it be assumed that in the case of a seaman a job offered in a foreign port would ordinarily be suitable. [But see American Trading Co. v. Steele, 9 Cir., 274 F. 774, 783]. However, when libellant returned in good health to the United States in February, 1945, he did not apply for a job but sat idle. I take judicial notice of the fact that in February, 1945, this country was at war and seamen were in demand. Thus, regardless of who has the burden of proof [See, Williston, Contracts § 1360], I find as a fact that libellant could have secured suitable employment in the United States on February 25, 1945. That is the last date to which wages and maintenance can be allowed to run.

■ In accordance with these principles libellant is entitled for 1 day in December, for 31 days in January and for 25 days in February to recover wages at the rate of $13.43 per day or a total of $765.51. He is not entitled to maintenance for all that period since he was in a hospital at respondent's expense from January 2 through January 29 and on a boat at respondent's expense from February 10 through February 25. In short he is entitled only to 13 days of maintenance at $5.25 or $68.25.

■ No interest has been claimed, but it would seem that interest should run at 6% simple interest from the date when those sums were due, which so far as appears was March 29, 1945, the end of the voyage. Williston, Contracts § 1358, note 5; § 1413. Calculations including this interest should be made by the parties and submitted to the court.

My disposition of this case is not inconsistent with Articles 4, 5 and 12 of International Labor Organization Convention No. 55, ratified by the United States October 29, 1938 and effective in this country since October 29, 1939. 54 Stat. 1693, 1696, 1697, 1700. That convention (subject to exceptions not here material) (1) makes "the shipowner * * * liable to defray the expense of * * * maintenance until the sick or injured person has been cured, or until the sickness or in-

capacity has been declared of a permanent character." Art. 4 (1), 54 Stat. 1696; (2) provides that "where the sickness or injury results in incapacity for work the shipowner shall be liable * * * (b) if the sick or injured person has dependants, to pay wages in whole or in part as prescribed by national laws or regulations from the time when he is landed until he has been cured or the sickness or incapacity has been declared of a permanent character". Art. 5 (1), 54 Stat. 1697; and (3) stipulates that "nothing in this Convention shall affect any law * * * between shipowners and seamen which ensures more favourable conditions than those provided by this Convention." Art. 12, 54 Stat. 1700.

■ Since the American admiralty law gives a seaman more favorable conditions than the so-called Shipowners' Liability Convention, I. L. O. Convention No. 55, adopted by the I. L. O. in 1936, it is consistent with that convention to apply not its terms but the rules of American admiralty law.

Decree for libellant in accordance with opinion.