[No. 32569. Department Two. March 29, 1954.]

EDWARD KALINOSKI, *Respondent*, v. ALASKA STEAMSHIP COMPANY, *Appellant*.[1]

[1]Reported in 268 P. (2d) 649.

*Bogle, Bogle & Gates* and *Edw. S. Franklin,* for appellant.
*Levinson & Friedman,* for respondent.

HILL, J.—This appeal has to do with some of the rights of the men who go down to the sea in ships, and the concomitant obligations and duties of the owners of those ships.

Edward Kalinoski, a resident of Detroit, signed on at New York August 12, 1950, as third assistant engineer on the S.S. "Joliet Victory," owned and operated by the Alaska Steamship Company, for a voyage to the Far East and return. He developed a gum infection and was given a medical discharge from the vessel at Yokohama on September 30, 1950, and was flown from that port to Seattle at the steamship company's expense, arriving there about October 1, 1950.

He reported to the United States Marine Hospital in Seattle for outpatient treatment October 9th, 11th, and 12th, and on each occasion received treatment and was pronounced fit for duty. He was paid wages, together with maintenance at the rate of six dollars a day, for the period after he left the ship to and including October 12, 1950, and was given his fare from Seattle to New York.

On October 14th, he flew to Detroit, where he reported to the United States Marine Hospital on October 15th and was again pronounced fit for duty. He testified that he thereafter received intermittent penicillin treatments from his own doctor, whom he saw once a week until March, 1951.

Kalinoski testified that he diligently and continuously sought both offshore and shoreside employment on his re-

turn to Detroit and was unable to find work until February 28, 1951, when he secured employment as an ironworker.

The voyage for which Kalinoski had been employed terminated at Raymond, Washington, January 13, 1951. He sued for wages, together with sustenance, from October 12, 1950, until the end of the voyage. The trial court awarded him wages and sustenance until the end of the voyage, and sustenance at the rate of six dollars a day for the period between the end of the voyage and the date on which he secured employment, February 28, 1951.

The steamship company appeals, contending that its obligation to Kalinoski terminated October 12, 1950, on which date he was pronounced fit for duty by the United States Marine Hospital in Seattle, and that suitable and equivalent employment was available to him at all times thereafter.

Before considering the issues involved in the instant case, we will discuss certain terms that are used somewhat loosely in the various decisions. In the present case, the parties bandy about "sustenance," "subsistence," and "maintenance" as though there was no distinction between them. It may be that they are right, but we, with some diffidence, suggest distinctions which, while not expressly spelled out in the cases, seem implicit in some of the holdings.

In addition to wages, a seaman is given food and quarters as part of his compensation while aboard ship. Hence, it would seem but natural that, when ashore in the service of the vessel and in certain other circumstances, he should receive, in addition to his wages, an allowance to cover food and lodging. This seems usually to be referred to as "subsistence." (The term "sustenance," used by respondent Kalinoski in his complaint and in the findings, is rarely encountered except as part of the definition of "subsistence" or "maintenance.") A definite rate for subsistence off the ship seems to be one of the provisions of the union agreements which usually govern the compensation paid to seamen in these later times. In this case, it appears that on the ship seamen were allowed subsistence at the rate of $1.80 a day, and off the ship the rate was six dollars a day. This

would seem to be part of the agreed compensation for seamen's services.

 The cases state the rule generally that a seaman who becomes ill or is injured during a voyage is entitled to maintenance and cure at the expense of the vessel (or its owners). The right to maintenance and cure is, by implication, a part of the contract of employment which no agreement can abrogate. *Cortes v. Baltimore Insular Line*, 287 U. S. 367, 77 L. Ed. 378, 53 S. Ct. 173 (1932); *Aguilar v. Standard Oil Co.*, 318 U. S. 724, 87 L. Ed. 1107, 63 S. Ct. 930 (1943).

In many cases in the reports dealing with the subject of maintenance and cure, reference is frequently made to the early cases in which the reasons for the doctrine are described with particularity. In one of the earliest and most quoted decisions, a classic written by Justice Story, which is generally recognized as laying the foundation for the doctrine in modern admiralty law, reference is made to "subsistence in case of a discharge" and "additional subsistence in case of sickness," and it is indicated that such "additional subsistence" includes, if necessary, someone to attend the sick or injured seaman. *Harden v. Gordon*, 11 Fed. Cas. 480 (1823). And in *Reed v. Canfield*, 20 Fed. Cas. 426, 429 (1832), another opinion by Justice Story, it is said:

"But so far, and so far only, as expenses are incurred in the cure, whether they are of a medical or other nature, for diet, lodging, nursing, or other assistance, they are a charge on, and to be borne by, the ship."

While there are decisions which seem to indicate that the maintenance involved in "maintenance and cure" is no more than the food and lodging to which the seaman is customarily entitled at the expense of the ship (*The Bouker No. 2*, 241 Fed. 831 (1917)), it has been held in other cases that "maintenance" includes whatever living expenses are necessarily incurred as an incident to cure; but, in any event, it does not extend beyond the seaman's need (*Smith v. Lykes Bros.-Ripley S. S. Co.*, 105 F. (2d) 604 (1939)) and is "measured by what is actually necessary and what the seaman

actually spends or obligates himself for." *Robinson v. Swayne & Hoyt*, 33 F. Supp. 93, 95 (1940).

It is agreed in this case that, if maintenance is due Kalinoski, it is at the rate of six dollars a day, which is the same as the subsistence rate off the ship.

Our concept that "maintenance" should be limited to payment made to a sick or injured seaman for living expenses of a character incident and necessary to his cure encounters difficulty, at least in the terminology used, in the case of *Warren v. United States*, 75 F. Supp. 836 (1948), in which it was held that a seaman who has been sick or injured in the service of his ship and is cured before the termination of the voyage is entitled, after cure, to maintenance and wages until he finds or should have found suitable employment. "Maintenance" is used in that case to denote an allowance for food and lodging both during and after cure.

While we shall hereinafter refer to the payment to which Kalinoski was entitled after cure (if there was cure) in addition to his basic wage, as "maintenance after cure," or "maintenance not incident to cure," to conform to the holding in the *Warren* case, *supra*, there remains in our minds a question, academic in this case: Is such payment not properly based upon the express terms of the employment contract for subsistence off the ship, rather than on maintenance stemming from the fact that the seaman had theretofore been ill or injured?

With this background, we come to a consideration of our present problem. The discussion will be simplified if divided into two parts: (a) Kalinoski's rights prior to the termination of the voyage on January 13, 1951; and (b) Kalinoski's rights subsequent to the termination of the voyage.

(a) *Kalinoski's rights prior to the termination of the voyage on January 13, 1951.*

■ When Kalinoski was given a medical discharge from the ship at Yokohama, he had the following minimal rights: (1) to cure; (2) to maintenance so far as it was a necessary incident to cure; (3) to wages (and maintenance after cure)

during any period in which he was unable to accept or secure other suitable employment, but in no event beyond the termination of the voyage; and (4) to transportation to the port at which he signed on.

Appellant says that these four minimal requirements were met by October 12th, by which date a cure had been effected and Kalinoski was fit for duty. He was paid maintenance and wages to that date, and was given transportation to New York.

But if a cure had been effected by October 12th, Kalinoski had a right to the continuance of wages and to maintenance after cure until he secured or could have secured suitable employment, but not beyond the termination of the voyage. While we may not agree with the terminology used by Judge Wyzanski in the *Warren* case, *supra*, we do agree with his reasoning that, when a seaman is removed from his vessel because of sickness or injury, he is entitled, after cure, to receive an allowance for the expenses of food and lodging to which he was entitled as part of the compensation for his services aboard or off the ship, for the same reason that he is entitled to his basic wages, *i.e.*, that, when his employment is terminated without fault on his part, he "ought not [after again becoming fit for duty] to be left in the lurch during the period of time that he has been assured a job."

The burden was on the steamship company to establish its defense that Kalinoski could, with reasonable effort, have obtained suitable employment prior to January 13, 1951. *American Trading Co. v. Steele*, 274 Fed. 774 (1921). There was testimony that such employment was available in the Seattle area at all times between October 12, 1950, and January 13, 1951; but appellant made no attempt to show what the employment opportunities were in Detroit.

At the conclusion of a voyage, or when their employment is sooner terminated, seamen are entitled to be returned to the port at which they signed on. *Warren v. United States, supra*. When he was paid off on October 12, 1950, Kalinoski accepted transportation to New York but

instead went to his home in Detroit. It is conceded that in so doing he was within his rights, and there seems to be no question that he was within his rights when he confined his search for suitable employment to Detroit and its vicinity.

Appellant's argument is that Kalinoski's testimony that he could not secure employment in Detroit is not worthy of credence, and it urges that we should take judicial notice that "unlimited demands existed for maritime transportation and employment" during the period in question because of the Korean war.

We do not agree that employment conditions in Detroit in late 1950 and early 1951 are matters of which we can take judicial notice. There being uncontradicted evidence, which the trial court believed, to support the finding that Kalinoski was unable to find employment prior to the end of the voyage, he was entitled to a judgment for wages plus six dollars a day for maintenance (not incident to cure) from October 12, 1950, to the end of the voyage, January 13, 1951, even though he was cured as of October 12, 1950.

(b) *Kalinoski's rights subsequent to the termination of the voyage.*

Kalinoski's right to wages, or to maintenance unless incident to cure, did not extend beyond the end of the voyage. Any recovery after that date must be predicated upon his right to *maintenance and cure.*

It is recognized that a seaman who is injured or becomes ill during the course of a voyage is entitled to maintenance and cure, and that his right thereto continues for a reasonable time after the voyage. (There are some exceptions and some limitations on the duration of maintenance and cure with which we are not concerned.) See *Calmar S. S. Corp. v. Taylor*, 303 U. S. 525, 82 L. Ed. 993, 58 S. Ct. 651 (1938), for a detailed discussion of what constitutes a reasonable time. Maintenance, as it is associated with cure, is in the nature of recompense for expenses (food and lodging and perhaps other expenses) incurred in the course of treatment or cure, and is recoverable only when it is necessary as an incident of the treatment of the injury or ailment.

See *Reed v. Canfield, supra; The Kenilworth,* 144 Fed. 376 (1906); *Brinkman v. Oil Transfer Corp.,* 300 N. Y. 48, 88 N. E. (2d) 817 (1949). The purpose of the historic implied contract to maintain a sick or injured seaman arises from his helplessness during his injury or illness. *The City of Avalon,* 156 F. (2d) 500 (1947). And maintenance was refused a seaman where the injury was comparatively trivial and there was no showing that any money had been expended or any liability incurred for maintenance during the eleven-day period of outpatient status at a marine hospital. *The Baymead,* 88 F. (2d) 144 (1937).

█ The determinative question is whether Kalinoski's ailment, or the course of treatment of his ailment, prevented him from supporting himself by other employment. *Lindquist v. Dilkes,* 127 F. (2d) 21 (1942). Even if Kalinoski was not cured, there was no testimony that his gum infection was disabling or that it rendered him unfit for duty subsequent to October 12, 1950. His own testimony was to the contrary, *i.e.,* that he was looking for employment at all times between his return to Detroit in October, 1950, and February, 1951, and was willing at all times to go to work.

Nor was food and lodging a necessary incident to the treatment he was receiving. After he was pronounced fit for duty at the Marine Hospital in Detroit on October 15, 1950, the only treatment he received consisted of seeing his own doctor once a week and having an occasional penicillin shot.

Therefore, no liability for maintenance beyond the termination of the voyage was established. No claim was made for expense of cure. The judgment, therefore, must be reduced by the amount allowed for maintenance subsequent to the termination of the voyage.

█ While the judgment must be reduced as indicated, Kalinoski, respondent here, prevails on the major issue on this appeal and is entitled to his costs. The judgment, as reduced, is affirmed.

GRADY, C. J., SCHWELLENBACH, DONWORTH, and WEAVER, JJ., concur.