WALLACE L. BRINKMAN, an Infant, by ISABEL BRINKMAN, His Guardian ad Litem, Respondent, *v.* OIL TRANSFER CORPORATION, Appellant.

Argued October 6, 1949; decided November 23, 1949.

*C. B. M. O'Kelley* and *Hervey C. Allen, Jr.*, for appellant. I. A seaman is not entitled to recover as maintenance and cure expenses which he has neither paid nor legally obligated himself to pay. (*Calmar S. S. Corp.* v. *Taylor*, 303 U. S. 525; *The Bouker No. 2*, 241 F. 831; *Marshall* v. *International Mercantile Marine Co.*, 39 F. 2d 551; *Reed* v. *Canfield*, Fed. Cas. No. 11,641; *Johnson* v. *United States*, 160 F. 2d 789, 333 U. S. 46; *Murphy* v. *American Barge Line Co.*, 169 F. 2d 61, 335 U. S. 859; *Robinson* v. *Swayne & Hoyt*, 33 F. Supp. 93; *Sonnesen* v. *Panama Transport Co.*, 298 N. Y. 262; *Zurich Gen. Accident & Liability Ins. Co.* v. *Childs Co.*, 253 N. Y. 324.) II. If the negligence actions had not been settled but had gone on to trial, infant plaintiff could not have recovered, as part of his damages, his parents' expenses for his medical care and support. They were recoverable only

by the parents in their action. Merely changing the form of his action has given plaintiff no right to call such expenses his own nor any greater right to recover them from defendant than he had in his Jones Act action. (*Panama R. R. Co.* v. *Johnson,* 264 U. S. 375; *Engel* v. *Davenport,* 271 U. S. 33.)

*Edward J. Keane* for respondent. I. The duty of the ship-owner to pay " maintenance and cure " to a seaman, who is injured in the course of his work is contractual, and of ancient origin. Negligence has no part in the doctrine of maintenance and cure. (*Harden* v. *Gordon,* Fed. Cas. No. 6,047; *The Montezuma,* 19 F. 2d 355; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525; *Aguilar* v. *Standard Oil Co. of N. J.,* 318 U. S. 724; *O'Donnell* v. *Great Lakes Dredge & Dock Co.,* 318 U. S. 36; *Smith* v. *Lykes Brothers-Ripley S. S. Co.,* 105 F. 2d 604.) II. The payment of some of the maintenance and cure bills, and the obligation to pay others, by the parents of the infant do not discharge the contractual duty of the vessel owner to pay the legitimate maintenance and cure expenses which were proven by the uncontradicted evidence. (*Coler* v. *Callahan,* 105 Misc. 457; *Pulcher* v. *Qualtiere,* 187 Misc. 727.) III. The decision of the parents not to seek a recovery for medical and hospital expenses in the loss of services action, which is predicated on negligence, merely was in the exercise of a legal right granted to the parents by the law of this State. IV. Prudence demanded that the infant seek to recover the medical, hospital, nursing and maintenance expenses in this maintenance and cure action, because the defendant's obligation is contractual, hence negligence need not be proved against the vessel owner in a maintenance and cure case. (*Aguilar* v. *Standard Oil Co. of N. J.,* 318 U. S. 724.) V. Seamen are " wards of admiralty " and, as such, are entitled to the fullest protection of the court. (*Robertson* v. *Baldwin,* 165 U. S. 275; *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424; *Murphy* v. *American Barge Line Co.,* 169 F. 2d 61; *Cortes* v. *Baltimore Insular Line,* 287 U. S. 367; *The Arizona* v. *Anelich,* 298 U. S. 110; *Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525.)

DESMOND, J. Plaintiff, then sixteen years old, was, while employed as a seaman on defendant's tug and tow proceeding through the New York Barge Canal, so seriously injured that his leg had to be amputated a few hours after the accident. The

young man's father was master of the tug at the time, and his father and mother arranged for urgently required surgical and hospital care. Plaintiff was confined in a hospital for about a month, then convalesced at his parents' home for more than two years. This suit was brought by the infant mariner, through his mother as guardian ad litem, to enforce defendant's obligation to pay for his maintenance and cure. Judgment was granted to plaintiff for about $2,700, made up as follows: about $1,200 for expenses paid or incurred by plaintiff's parents for hospital, physicians' and nurses' bill and an artificial leg, and $1,500 for the reasonable value of plaintiff's board and lodging at his famiy home. At the Appellate Division defendant argued, although no such point seems to have been made at the trial, that, although plaintiff's accident was, admittedly, in the service of the ship, he had no right to any award of maintenance and cure since he himself had neither incurred any expense nor obligated himself to reimburse those who had paid the costs. The Appellate Division majority held that " the circumstance that the parent paid for some of the items of maintenance and cure, without express agreement providing for reimbursement by a minor son, ought not to relieve the defendant from the obligation to pay therefor." (274 App. Div. 985.) Two dissenting Justices (citing *Johnson* v. *United States,* 333 U. S. 46, 50, and other cases) thought that the maritime law forbade any such recovery when the seaman had neither paid anything nor obligated himself to pay anything, for his treatment and care. We think the award to plaintiff was proper, under applicable rules of maritime law.

It has often been said, in one form of words or another, that a seaman who is hurt or falls sick on a voyage, may recover from the shipowner, for " maintenance and cure ", only such amounts as the seaman has spent or for which he has obligated himself (*Calmar S. S. Corp.* v. *Taylor,* 303 U. S. 525, 531; *Johnson* v. *United States, supra; Sonnesen* v. *Panama Transport Co.,* 298 N. Y. 262, 267). But, relating that rule to the facts of the cases in which it has been announced, we find that it has never been applied so as to excuse a shipowner from liability for moneys actually spent in an emergency by relatives or other interested persons, on behalf of an injured man. When the cases say that the owner is liable for the seaman's expenditures

for his own cure only, they are merely expressing the anciently settled holding that an owner, sued for maintenance and cure, is liable not as in tort, for indemnity or completely compensatory damages, but only for the actual expense of the medicines, physicians' and nurses' services and food and lodging needed by the sick or injured crewman (*Reed* v. *Canfield*, 1 Sumner 195, 20 Fed. Cas. No. 11,641). For the obligation to " maintain and cure " is a contractual one, absolute but covering specific items of expenditure only. The seaman's physical needs are the measure of the ship's liability. In the oldest American case: *Harden* v. *Gordon* (2 Mason 541, 543, 11 Fed. Cas. No. 6,047 [1823]), Justice STORY pointed out that it was the sailor's right " to be healed at the expense of the ship ", and added that his claim for such expenses " constitutes, in contemplation of law, a part of the contract for wages ". *The Osceola* (189 U. S. 158, 175), a classic decision in American maritime law, put the rule in this form: " That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued." The point left open by the last clause in that quotation from *The Osceola* (*supra*) was settled in *The W. L. White* (25 F. 503), which, in a holding now unquestioned (see *Calmar S. S. Corp.* v. *Taylor, supra,* p. 529), declared that the expenses recoverable were for a reasonable time after the voyage, also. Applying those concepts to modern mariners like this plaintiff who undertake no long sailing voyages, but work on harbor or inland craft, the Second Circuit, in the well-known *The Bouker No. 2* (241 F. 831, 835), realizing that such vessels do not ordinarily " maintain " or " cure " their sick or disabled on board, but send them to hospitals or to their homes, allowed recovery for lodging in the seaman's own home, plus medical and other similar expense. *The Bouker No. 2* (*supra*) took note of a fact, discussed in many later cases, that the United States Government was, in various ports, providing free service to seamen in marine hospitals. The court in the *Bouker* case made it plain that a seaman cannot " deliberately refuse " to go to such a marine hospital and instead charge the owner with expensive accommodations elsewhere, but it made it equally clear that where, as in our present case, the owner does not suggest removal to a marine hospital and the

seaman in good faith goes or is taken elsewhere, his hospital costs are recoverable. (The cases such as *Davis* v. *The Erie*, 1 Betts Dec. 32, 7 Fed. Cas. No. 3,632a, where the seaman, in a foreign port, gets gratuitous care in a charitable institution have, obviously, no relevance here.)

From the brief summary we have given, of the development of the American doctrine of maintenance and cure, it will be seen that the owner's obligation either directly to furnish necessary care and lodging, or to pay for it, is absolute. If the seaman pays for it, his employer must reimburse him. We do not see why the owner should escape this absolute contractual obligation merely because the parents of an infant sailor, in the emergency situation of a grievous injury, went ahead and, as parents, obtained and paid for what their son immediately needed.

It is ancient learning that seamen are the wards of the admiralty courts, which are particularly solicitous as to their rights, and that the policy of the law maritime is to avoid the application, to seamen's cases, of the harsh rules of the common law (*Gabrielson* v. *Waydell,* 135 N. Y. 1, 5; *Socony-Vacuum Oil Co.* v. *Smith,* 305 U. S. 424, 431). It has even been said that the employer " occupies a position of guardianship " (*Murphy* v. *American Barge Line Co.,* 169 F. 2d 61, 64, certiorari denied 335 U. S. 859). Here the suffering man was not only a seaman, to be protected by the law like an infant (*Robertson* v. *Baldwin,* 165 U. S. 275, 287), but he was in fact an inexperienced boy, badly hurt. The owner's representative on board was the boy's own father. The owner's obligation to care for his infant employee was as fixed as its duty to pay wages. It cannot discharge that obligation except by paying this judgment. The common-law rules as to this infant's nonliability to his own parents to reimburse them for their expenditures for him should not be brought into play to bar recovery here. It would, we think, badly serve the interests of these " wards of the courts " to hold that an owner may escape his burden by standing aside while parents or relatives succor the ailing seaman.

Certain other facts confirm the propriety of an affirmance here. After the accident, the young man's parents, on his behalf and their own, commenced an action against this defendant. That action, as originally brought, demanded full recovery for the injured man's pain and suffering, for the parents' loss of his

services, and for the cost of his treatments. An attorney appeared for defendant and informed the parents that he (the attorney) represented an insurance company whose policy covered all defendant's liability to plaintiff and his parents except as to maintenance and cure, which latter was the subject of another insurance policy issued to defendant by another insurance company not represented by that attorney. Arrangements were then made whereby the parents' claims and the infant's claim, except for maintenance and cure, were compromised and the compromise amounts paid, the infant's settlement being duly approved by the proper court. The settlement papers made it clear that the maintenance and cure items were specifically excepted from the compromise, and the complaint in this action was then amended to cover maintenance and cure only. The second insurance company, through a different attorney, then took over the defense. These circumstances, we think, are further proof that this defendant, insured by two different insurers, has so far performed only part of its duties toward these people. Insured or uninsured, defendant itself is liable for this debt. When the original settlement was made, defendant through the attorneys who first appeared for it, knew of this claim for maintenance and cure and, without indicating any objection to it, arranged that the compromise documents should specifically exclude it. Had the action continued as originally brought, as a negligence suit, plaintiff's parents, as part of their own damages, could have recovered for the same items which are contested on this appeal. It would be inequitable and inconsistent with maritime law principles to let this contest succeed, because of a series of incidents not related to defendant's liability, but resulting from the fact that defendant carried two liability insurance policies.

The decisions referred to in appellant's brief and in the memorandum filed by the Appellate Division minority, do not forbid recovery here. Some of them, like our *Sonnesen* case (298 N. Y. 262, *supra*), merely state the settled doctrine that maintenance and cure includes only expenditures actually made or owed for. Others, like *United States* v. *Johnson* (160 F. 2d 789, affd. as to maintenance and cure *sub nom. Johnson* v. *United States,* 333 U. S. 46, *supra*) and *Robinson* v. *Swayne & Hoyt* (33 F. Supp. 93), are concerned with special situations where the sea-

man either refuses marine hospital services or leaves such a hospital voluntarily, and refuses further treatment and goes home. The courts treat such situations as if the cure had been completed and the owner's debt discharged (*The Kenilworth*, 144 F. 376, certiorari denied 202 U. S. 617). This young man was never offered any such choice between hospitals but, under the direction of physicians and his parents, followed a proper and prescribed course of hospitalization, surgery and convalescence, without any suggestion by defendant that some other course be followed.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and BROMLEY, JJ., concur.

Judgment affirmed.