SOCONY-VACUUM OIL COMPANY, INCORPORATED, V. JOHN B. ADERHOLD.

No. A-2790. Decided March 14, 1951.
Rehearing overruled June 20, 1951.
(240 S. W., 2d Series, 751.)

294

*Royston & Rayzor* and *Robert Eikel,* all of Houston, for petitioner.

A seaman can recover maintenance only when he has actually incurred expenses, and the court erred in allowing him maintenance at times when he had other employment ashore, or was receiving aid from the G.I. fund to go to school, or was living at his mother's home with no expense to himself. The Court also erred in allowing a judgment in excess of that asked for in the pleadings. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 82 L. Ed. 993; International & G. N. R.R. Co. v. Butcher, 98 Texas 462, 84 S.W. 1052; Johnson v. United States, 9 C.C.A. 1947, 160 Fed. 2d 789.

*Mandell & Wright* and *Arthur J. Mandell,* all of Houston, for respondent.

A shipowner is obligated to reimburse a seaman for incurred expenses and those for which he obligated himself to pay during disability which manifested itself while attached to his vessel, except for time in marine hospital or in service on another ship. Plaintiff's pleadings under the cause of action for maintenance based on general maritime law amply supports the court's judgment. Pacific Mail S. S. Co. v. Lucas, 264 Fed. 938; Emmons v. Pacific Indm. Co., 146 Texas 496, 208 S.W. 2d 884; Brinkman v. Oil Transfer Corp., 88 N. E. 2d 817; Jones v. Waterman Steamship Corp., 155 Fed. 2d 992, 996.

Mr. Justice Wilson delivered the opinion of the Court.

The parties will be referred to according to their position in the trial court.

Plaintiff, formerly a seaman on defendant's tanker, the SS SOCONA, filed two causes of action in this suit: first, for maintenance and cure; second, for damages caused by a fall from a shelf on the shelter deck. He contends that the shelf was an unsafe place to work; that it was negligence to send him upon this shelf with this ship rolling; that it was negligence to have loose fittings stored on the shelf, and that it was negligence to allow a "gob of grease" upon which he slipped to remain on the shelf. The jury found negligence under the Jones Act, Title 46, Section 688, U.S.C.A., and awarded $35,907.00 for a back injury diagnosed by plaintiff's doctor as an herniated disc.

The trial court entered a judgment reflecting the jury's findings, which has been affirmed by the Court of Civil Appeals. 230 S. W. 2d 834.

In response to his action for maintenance and cure, the jury found that plaintiff was injured while employed on defendant's vessel; that $4.00 a day was a reasonable compensation for maintenance and cure; and that plaintiff would reach his maximum recovery on January 15, 1950, beyond which his condition could not be improved by ordinary treatment known to medical science. The trial judge determined that plaintiff was entitled to 1098 days of maintenance and cure at $4.00 a day, or a total of $4396 in addition to the damages for negligence.

Defendant contends that during a portion of the period for which maintenance and cure were allowed plaintiff was employed by others and supporting himself; that during another portion of this period plaintiff lived with his mother to whom he was not obligated to pay board and room; and that during

another portion of this period plaintiff attended a mortuary school and drew veteran's subsistence payments from the Federal Government. Defendant attacks the entire sum on the ground that plaintiff did not offer positive proof that the sums he expended were reasonable. Defendant asks for a reduction of the sum to $2500 on the grounds that plaintiff plead maintenance and cure in the amount of $2500 and recovered $4396.

■ Maintenance and cure is an ancient remedy peculiar to Admiralty Law arising out of contract and not negligence. It is an obligation a vessel owes an injured or sick seaman. It was a forerunner of the modern Workmen's Compensation Law.

■ Plaintiff was discharged fit for duty by a government marine hospital soon after his fall. He sailed one voyage on the SS Cannon Beach. He testified that he was not able to do the work and has made no further attempt to work as a seaman. The trial court properly deducted from the computation of time for maintenance and cure the period plaintiff was in the marine hospital (at government expense) and the period of the voyage on the SS Cannon Beach. The Balsa, 10 Fed. 2d 408.

Within the period for which the trial court allowed maintenance and cure, plaintiff was employed by two different undertakers (one paid wages of $15.00 and the other $35.00 a week) as a part of and during his nine-month course at a mortuary school. Defendant contends that it is under no obligation for maintenance and cure while plaintiff worked for someone else. Plaintiff contends that maintenance and cure is a matured contractual obligation not affected by shore employment. When a seaman signs out on a subsequent voyage his maintenance and cure arising out of a former voyage is suspended during the subsequent voyage, for feeding and caring for him is the obligation of the second vessel, as the trial court correctly held in this case. The mere fact that an injured seaman attempts shore employment should not of itself deprive him of his maintenance and cure. It may raise a question of fact as to whether or not his injury during that time prevented him from supporting himself in whole or in part. The question to be determined is the extent to which the plaintiff's injuries prevented him from fully supporting himself by shore employment. In discussing maintenance and cure in Calmar Steamship Corp. v. Taylor, 303 U. S. 525, 82 L. Ed. 993, 58 Sup. Ct. 651, the court said: "The duty does not extend beyond the seaman's need." In The City of Avalon, 156 Fed. 2d 500, the court said: "The purpose of the historic implied contract to maintain an injured seaman arises from his

helplessness during his injury, a right 'every court should watch with jealousy' to maintain. Story J., in Harden v. Gordon, 11 Fed. Cas. 480 No. 6047." In Loverich v. Warner Co., 118 Fed. 2d 690, the court specifically excluded periods of shore employment. To hold that shore employment as a matter of law barred recovery for maintenance and cure, as defendant urges, would discourage an injured seaman from attempting to support himhelf. On the other hand, to hold that sickness or injury arising during a voyage creates an obligation for maintenance and cure irrespective of shore employment, as plaintiff urges, would impose an unreasonable burden upon the vessel. This is a fact question which should be defined in the court's charge and submitted in appropriate special issues.

■ The specific facts which the jury should find in this type of case are:

(a)  the time when maintenance and cure should begin;

(b)  the time when maintenance and cure should terminate;

(c)  the per diem allowance for maintenance and expenses of cure;

(d)  the total amount of money which plaintiff has earned at the time of trial by his shore employment within the bracket of time defined in (a) and (b) above; and

(e)  the total amount of expected future earnings from shore employment between the time of trial and the termination of maintenance and cure.

This will allow the trial court in entering judgment to deduct the amount of money earned by shore employment from such sum as may be allowed for maintenance. Of course, the trial court will exclude, as a matter of law, periods when a plaintiff is on other ships or in government hospitals.

Neither plaintiff nor defendant requested additions to the charge or special issues upon this testimony or objected to the court's failure to charge upon this subject. Since issues concerning the amount of short employment are actually part of the defense, they are issues raising an independent ground of defense and the burden rests upon the defense to request them. Not having requested issues in this case, the defense waived this independent defense. Rule 279, T.R.C.P.

■ Defendant's contention that it is relieved from the payment

of maintenance and cure during the period when plaintiff was living with his mother is without merit. In Cortes v. Baltimore Insular Line, 287 U. S. 367, 77 L. Ed. 368, 53 Sup. Ct. 173, the court said, "If the seaman has been able to procure his maintenance and cure out of his own or his friend's money, his remedy is for the outlay". In Brinkman v. Oil Transfer Corp., 300 N. Y. 48, 88 N.E. 2d 817, 13 A.L.R. 2d 623, the court said, "It would, we think, badly serve the interests of these 'wards of the courts' to hold that an owner may escape his burden by standing aside while parents or relatives succor the ailing seaman."

Defendant's contention that it is relieved from the payment of maintenance and cure during the period when the plaintiff was receiving veteran's subsistence payments from the Federal Government is without merit. Plaintiff's rights under what is commonly called the GI Bill of Rights did not arise from his employment contract with defendant, were personal to him, and had no connection with his injury or with defendant's obligation by reason of that injury. This is a completely different situation from that in which plaintiff seeks other employment because other employment demonstrates his ability to work, thus going to the nature and extent of his disability.

■ Defendant's contention that plaintiff failed to offer proof that the amounts he expended for food and lodging were reasonable is without merit in view of the jury's finding of $4.00 a day. Plaintiff contended for $6.00 a day. In admiralty, if a defendant believes that amounts actually expended for maintenance and cure are unreasonable, he may offer rebuttal proof. The common law rule placing the burden upon plaintiff of producing independent proof of the reasonableness of expenditures for food, lodging, medicine, hospital expense, doctor's charges, etc., would place an undue burden upon seamen who may incur expense for maintenance and cure in seaports all over the world.

■ Defendant's contention that plaintiff is limited by his pleadings to a total of $2500 for maintenance and cure is correct. It is true that plaintiff pleads maintenance in the amount of $6.00 a day but this is not a liquidated demand because the pleading does not allege a definite number of days. The pleadings establish the boundary of a lawsuit. That boundary should be marked with corner posts "for all the world to see".

■ Plaintiff contends that since this involves a maritime law the special position of a seaman as a ward of the admiralty court entitles him to special consideration in construing his

petition. Hopson v. Gulf Oil Corp., Texas Sup Ct., 150 Texas 1, 237 S.W. 2d 352, resolves this question against plaintiff and we here reaffirm that holding. In admiralty there is no jury. Since in admiralty a trained judicial mind finds the facts and fixes the damage, the practice has always been informal.

In an action brought for personal injuries when the Jones Act was new, a seaman sought to gain damages on the law side of the court under the Jones Act and collect them in admiralty through in rem proceeding against the ship. In Plamals v. The Pinar Del Rio, 277 U. S. 151, 48 Sup. Ct. 457, 72 Law Ed. 827, the court said:

"* * * Seamen may invoke, at their election, the relief accorded by the old rules against the ship, or that provided by the new (the Jones Act) against the employer. But they may not have the benefit of both." (Parenthesis added.)

Likewise, when plaintiff elects to bring his action in a Texas court he must conform to Texas rules of pleading and practice just as any other litigant. A judgment must conform to the pleadings. Rule 301, TRCP. A judgment for money damages in excess of the amount pleaded cannot be supported and accordingly the judgment of the trial court should be reformed. City of Dallas v. Jones, 93 Texas 38, 49 S.W. 577 and 53 S.W. 377; Denman v. Stuart, 142 Texas 129, 176 S. W. 2d 730.

Turning now to the second cause of action for negligence, we find that the only questions brought forward are raised by defendant's objections to the form of the special issues.

Since the judgment can be supported under Special Issues Nos. 6 and 7, we will set out Special Issue No. 6, which is:

### SPECIAL ISSUE NO. 6.

"Do you find from a preponderance of the evidence that the sending of plaintiff, John B. Aderhold, to stand on the shelf in order to paint the overhead and side of the shelter deck of the SS SOCONA, while the vessel was on the high sea and rolling was negligence, as the term is herein defined to you?

"To which the jury answered 'We do'."

In response to Special Issue No. 7 the jury found that the facts found under Special Issue No. 6 were the proximate cause of plaintiff's injuries.

.Defendant objects to Special Issue No. 6 on the grounds that. it is argumentative and not an ultimate fact issue. This is not well taken. Plaintiff would not have fallen had he not been upon the shelf.

Defendant's next objection is that the issue is a charge upon the weight of the evidence in that it assumes controverted facts. The evidence is uncontroverted that plaintiff was sent to work upon the shelf, that he did work upon the shelf, and fell from it. Defendant's witness Calvin Gaeblor testified that he was the boatswain in charge of plaintiff and that he ordered plaintiff on to the shelf to paint. The evidence is also uncontroverted that the vessel was on the high sea (i.e., out of national waters) and rolling. There was a great deal of controversy over the degree of roll but the issue as framed did not comment upon the degree of rolling.

■ Defendant's last objection, and for us the most difficult attack on this issue, is that painting at sea in places like this shelf was normal routine sailor's work and as a matter of law defendant could not be negligent in asking an employee to do work he was hired to do. A seaman is by definition a man who can move about and do his work while adjusting his bodily movements to the roll and pitch of the ship.

Viewing the evidence most favorably to the plaintiff, as we must, we cannot hold as a matter of law that the ship could not be rolling enough at a given time for it to be negligence to require plaintiff at that time to paint on this shelf. Seamen stand in different position from other employees in their absolute duty to obey orders. Plaintiff had no choice. He had to get upon the shelf and paint. He could not quit and leave the ship and was subject to disciplinary action if he refused. The witness Charles E. Brady, Chief Mate of the Socona, made this a fact question when he testified as follows:

"Q. But I believe you testified that if the weather had been what you mariners described as rough you would not have sent a man on that shelf, or permitted him to be sent there?

"A. We would have found other work for him.

"Q. And would you have permitted one of your men to paint on that shelf?

"A. No." (S.F. p. 533.)

It is true that this same witness testified that rolling as the ship was at that time it was not dangerous for men to work on

that shelf. Plaintiff testified that in his opinion the ship was rolling too much and that he protested to no avail when the boatswain ordered him upon the shelf.

The witness Glen A. Johnson testified as follows:

"It was pretty rough and the ship was rolling and pitching."

This, coupled with plaintiff's testimony, raised an issue of fact as to the amount of roll of the ship. The Court of Civil Appeals made a specific affirmative finding for the plaintiff on the sufficiency of the evidence. The volume of proof offered by defendant to the effect that the seas were normal was persuasive to this court. Still, a fact issue having been raised, the question was for the jury.

We conclude that Special Issues Nos. 6 and 7 will support the trial court's judgment.

Having determined that Special Issues Nos. 6 and 7 will support the judgment, it becomes unnecessary to discuss Special Issues 1 through 5 and 8 through 18.

The trial court's judgment and that of the Court of Civil Appeals on negligence should be affirmed and it is so ordered. The trial court's judgment and that of the Court of Civil Appeals on maintenance and cure should be reformed. It is ordered that plaintiff be allowed maintenance and cure in the sum of $2500 and no more. All costs of appeal are taxed against plaintiff. Rule 501, T.R.C.P.

Opinion delivered March 14, 1951.

ON REHEARING.

MR. JUSTICE WILSON delivered the opinion of the Court.

■ By motion for rehearing defendant contends that the evidence of plaintiff's shore employment was uncontroverted and, since no fact issue requiring submission was raised, this should have been treated as a question of law. This contention is correct.

■ The trial court should not have allowed maintenance for the eight-week period during which plaintiff was making $35.00 a week for the reason that he was able to support himself and therefore was not incapacitated. The $12.00 a week which plaintiff earned during the twelve-week period did not equal the

amount the jury determined to be necessary for support. The fact that plaintiff earned something during this period is evidence that he was not totally disabled, at least during this period. The duty to pay maintenance arises under the employment contract from plaintiff's incapacity. We have found no cases discussing the effect of a partial disability upon maintenance and cure. Under this record, we hold that the trial court was correct in allowing maintenance for this twelve-week period but it should have deducted the amount he actually earned.

■ We did not intend to hold in our original opinion that the submission discussed in this case is the only way that a trial judge can submit problems of maintenance and shore employment. Maintenance does not have to be submitted on a per diem basis. We are limited in this opinion to the specific points of error and trial objections made to this charge as supported by the evidence in this case. Wages earned by shore employment should be treated as evidence negativing disability and thus putting in issue the duty to pay maintenance in whole or in part.

■ In the treatment of this subject in our original opinion we said that defendant was entitled to credit for plaintiff's entire earnings during the eight-week period, whereas on rehearing we have determined that defendant is entitled only to a cessation of maintenance during the periods when the plaintiff is completely self-supporting, and not to his entire earnings. Loverich v. Warner Co., 118 Fed. 2d 690. Here the trial court should have deducted from the total sum allowed for maintenance $4.00 a day for eight weeks or $224.00 plus his earnings during the twelve-week period of $144.00,—a total of $368.00. In view of the fact that we have reduced the judgment for maintenance on the pleadings by $1896.00, this error of the trial court does not require a modification of the judgment under Rule 503, T.R.C.P.

Defendant relies upon U.S. v. Robert E. Johnson, 160 Fed. 2d 789, affirmed in 333 U. S. 46, 68 Sup. Ct. 391, 92 L. Ed 468, for the proposition that a plaintiff cannot recover for maintenance while living with his parents. This decision was based upon a California statute which requires parents to maintain their minor children. Here plaintiff was not a minor but was 28 years old and his mother and stepfather were under no legal obligations to furnish him board and room free of cost. In addition, the Johnson case specifically limits its holding to a situation in which there was no agreement by the plaintiff to reimburse his parents for board and room.

■ We have re-examined the record and again find evidence of an agreement between plaintiff and his mother. The fact that there may be a conflict in the testimony goes to its weight.

■ Neither was plaintiff furnished board and room while attending the mortuary school. The fact that he received an allowance under the GI Bill of Rights, Title 38, Ch. 11c, U.S.C.A., would not operate to relieve defendant any more than would any other income of plaintiff's not arising from and demonstrating an ability to work. While seamen were held to be wards of the admiralty court because they frequently were destitute and helpless, defendant has cited no cases and we have found none holding that a seaman must be destitute and without any income or resources in order to receive maintenance. On the contrary, there are numerous cases holding that a seaman cannot recover maintenance except for money actually spent or liability incurred (involving an extension of credit). Aguilar v. Standard Oil Co. of New Jersey, 318 U. S. 724, 63 Sup. Ct. 930, 87 L. Ed. 1107; The Baymead, 88 Fed. 2d 144; Murphy v. American Barge Line Company, 169 Fed. 2d 61. Under this rule, the seaman obviously has to live upon credit or to pay his living expenses from savings or an income. These cases do not bar recovery here because plaintiff spent money for board and room. On the other hand, those cases holding that a seaman cannot recover for maintenance and cure received in a charity hospital at no expense to himself, Reed v. Canfield, 20 Fed. Cas. 426, No. 11,641; Davis v. The Erie, 7 Fed. Cas. 120, No. 3632(a), do not apply for the reason that money received under the GI Bill of Rights was earned by a prior service and is not charity and has specific limitations. It is not similar in any respect to benefit received from a marine hospital except that both originate in the Federal Government. From a marine hospital the seaman received maintenance and cure in kind as such and by reason of his employment as a seaman plus a disability incurred during that employment. The Baymead, supra. The fact that plaintiff chose to avail himself of the educational provisions of the GI Bill of Rights during convalescence rather than sitting in idleness is not a comparable situation and does not operate to relieve defendant of its maintenance obligation.

Defendant argues that our discussion of maintenance is in conflict with Calmar Steamship Corporation v. Taylor, 303 U. S. 525, 58 Sup. Ct. 651, 82 L. Ed. 993, in providing for future maintenance. We do not so construe it. The plaintiff is limited by a finding of the definite time at which he will obtain his

maximum cure. What we have said is consistent with the Calmar case.

Defendant re-urges its contention that Special Issue No. 6 is not an ultimate fact issue, in that it does not submit an inquiry as to the degree of roll and pitch of the ship. The degree of roll and pitch of the ship is not an ultimate issue in itself but is a circumstance to be considered in determining whether the act of ordering plaintiff upon the shelf was or was not negligence. See Naylor v. Isthmian Steamship, 187 Fed. 2d 538 (time for perfecting appeal not yet expired) for a similar situation. The act of ordering plaintiff upon the shelf being uncontroverted, the only issues required were an issue determining whether or not it was negligence to order plaintiff upon the shelf under circumstances prevailing at that time and an issue on proximate cause. Rule 279 T.R.C.P.

Defendant raises in this court for the first time the contention that the court's charge allows a double recovery in that the measure of damages for negligence includes an item of the present cash value of lost wages between the date of the accident and the date of the trial and also maintenance and cure for the same period. Defendant argues that plaintiff was obligated to support himself from this item of damages and therefore is not entitled to maintenance, relying upon Smith v. Lykes Bros.-Ripley Steamship Co., 105 Fed. 2d 604, certiorari denied 308 U. S. 604, 60 Sup. Ct. 141, 84 L. Ed. 505. Since this was not raised in the trial court either in the objections to the court's charge or the motion for new trial, or on appeal in the assignments of error, we do not pass upon it.

The motion for rehearing is overruled.

Opinion delivered June 20, 1951.

JUSTICES CALVERT, GRIFFIN AND SMITH, concurring.

We concur in the judgment of the court overruling petitioner's motion for rehearing. We do not concur in that portion of the opinion on motion for rehearing which deals with the manner of crediting respondent's shore earnings on the amount allowed for maintenance.

In our opinion on original submission we laid down the rule that the shipowner was entitled to have the entire amount of the seaman's shore earnings credited against and deducted from the

amount found by the jury (or the court) to be necessary for the seaman's maintenance during the period of his disability. Neither party has challenged either the justness or the soundness of that rule by motion for rehearing. The opinion on motion for rehearing nevertheless abandons the rule of crediting there announced and adopts a new theory involving two rules of exclusion or crediting, viz: (1) When the per diem earnings of the seaman are *more t*han the per diem allowance for maintenance and cure, the number of days should be excluded from the period of reckoning and the total excess earnings on those days should be ignored, and (2) when the per diem earnings are *less* than the per diem allowance for maintenance and cure, the earnings should be credited on the allowance and the seaman awarded the difference on the theory of partial disability.

We believe we should adhere to the rule announced in the original opinion. The theory of allowing maintenance seems to be that the shipowner is under a contractual obligation to support a seaman who, because of injury or illness arising during a voyage, is unable to support himself out of his own earnings from other employment. On this theory it seems to us that the seaman's full earnings should be used for his maintenance and credited against the amount allowed, whether the earnings be a large amount for a few days services or smaller amounts for several days services. Some of the Federal courts have gone so far as to indicate that the seaman is under an obligation to minimize his damages and that the shipowner is entitled to credit for such amounts as the seaman by the use of diligence could have earned as well as for the amounts actually earned. Warren v. United States, 75 Fed. Supp. 836; Halvorsen v. United States, 284 Fed. 285.

We take it that as a necessary consequence of the theory of crediting of earnings now adopted we have abandoned that portion of our original opinion which suggests that the jury should make fact findings on (d) the total amount of money earned at the time of trial and (e) the total amount of expected future earnings.

Opinion delivered June 20, 1951.