**KEEFE v. AMERICAN PAC. S. S. CO.**

No. 14299.

United States District Court
S. D. California, Central Division.
Feb. 19, 1953.

854

Herbert Resner, Los Angeles, Cal., for libelant.

Dan Brennan (of Overton, Lyman, Prince & Vermille), Los Angeles, Cal., for respondent.

TOLIN, District Judge.

The facts of this case are relatively simple. The dispute arises in application of well-established principles of maritime. law thereto.

On November 5, 1951, at the Port of San. Pedro, California, libelant signed written articles to serve aboard the U.S.N.S. Mil-. licoma in the capacity of oiler at base wages. of $241 per month for a voyage not to exceed twelve calendar months. He signed. articles, entered upon duty and rendered deck service while the vessel was still tied. to the wharf at that Port. Before it left the Port upon the contemplated voyage but after the signing of the articles and after the entry upon his duties, libelant was in-. jured while driving away from the vessel. on a personal mission. He was provided. hospitalization and medical care so there is.

no claim on this account. Although he has received his cure, he asks for maintenance during the period of his disability. Both parties conceded that if he is entitled to this, that a period of 172 days is the appropriate time period. The voyage was actually unundertaken by the vessel and was still in progress at the time this action was commenced. It is noted that the voyage was for a period of twelve months and that before the twelve-month period had ended, libelant, having become fit for duty, shipped out on another vessel on May 19, 1952. He claims wages until that date. Although many shipowners in this area had entered into a contract with the appropriate Maritime Union fixing a maintenance rate, the respondent shipowner was not a party to that or any contract on this subject.

■ It is now settled law that a seaman injured ashore while a crew member of a vessel is injured in the vessel's service. Aguilar v. Standard Oil Co. of New Jersey, 1942, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; Farrell v. United States, 1948, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850; Warren v. United States, 1950, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503; Ellis v. American Hawaiian S. S. Co., 9 Cir., 165 F.2d 999, 1948 A.M.C. 707; Kyriakos v. Goulandris, 2 Cir., 151 F.2d 132, 1945 A.M.C. 1041; Nowery v. Smith, 3 Cir., 161 F.2d 732, 1947 A.M.C. 756; Moss v. Alaska Packers Ass'n, 70 Cal.App.2d Supp. 857, 160 P.2d 224, 1945 A.M.C. 493; Stanley v. Weyerhaeuser, S. S. Co. (Superior Court., Calif. San Francisco) 1947 A.M.C. 411; Shipowners' Liability Convention of September 29, 1939, 54 Stat. 1693.

■ In Norris, "The Law of Seamen", Vol. II, 168, the author discusses the meaning of the phrase "in the service of the ship" and says:

"The meaning of 'in the service of the ship' was further clarified in Farrell v. United States, by the court's explanation that it meant that the seaman must generally be answerable to the call of duty rather than that at the time of the onset of illness or injury he was in the actual performance of routine tasks or engaging in activities pursuant to specific orders. Since the Aguilar case, a liberal interpretation of 'in the service of the ship' has been applied. A number of cases have been decided wherein awards of wages and maintenance and cure have been granted to seamen ill or injured ashore while in the pursuance of their own relaxation and pleasures.

"The effect of the Aguilar decision has been to expand and elasticize the meaning and extent of the phrase 'in the service of the ship' so that at the present time it virtually encompasses all of the seaman's activity from the time he first boards the vessel to the time that he departs from her after signing off, and perhaps, for a reasonable time thereafter should any illness manifest itself traceable to his activities while in the ship's service. The personal nature of the seaman's activity at the moment of illness or injury is not the determining factor in deciding his right to an award. * * *"

It appears that wages and maintenance have been allowed where the seaman was injured in a barroom altercation, Aguilar and Moss cases above cited, and when assaulted as in the Kyriakos case, supra, as well as in a diving accident suffered while engaged in recreation ashore as in the Ellis case, supra, and in a fall from a balcony while ashore as in the Warren case, supra. The Court sees no distinction in principle between the suffering of an injury in a private automobile accident and in the various cases cited. There is no suggestion of misconduct on the part of libelant. The voyage has outlasted libelant's disability. The Court awards him maintenance for 172 days, being the agreed period of his disability. The parties are in active dispute as to the rate of maintenance. Respondent claims that it should be $4 a day. This claim is based upon a contention that this sum of money is adequate to provide room and lodging ashore for a seaman. There has not been any evidence to that effect. Libelant insists upon $8 per day upon the basis that the contract between

his union and other shipowners sailing from this locality provides for that rate. Of course, respondent is not bound by a contract to which it is not a party. However, the fact that $8 per day has been recognized in contracts by numerous other parties is persuasive of the reasonableness of the sum. The test, in absence of contract, is that which is reasonably necessary to maintain the seaman. Brinkman v. Oil Transfer Co., 300 N.Y. 48, 88 N.E.2d 817, 13 A.L.R.2d 623, 1950 A.M.C. 341; Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; United States v. Johnson, 9 Cir., 160 F.2d 789. It is noted that the same amount is allowed many of the civil employees of the United States while traveling in connection with their employment. This sum is accordingly allowed although the Court specifically finds that respondent is not a party to a contract which would bind it to that sum but fixes it upon the basis that $8 per day is a reasonable sum.

■ Wages are allowed for the same period of disability. This is upon the principle declared in the leading case of The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 487, 47 L.Ed. 760. The rule of The Osceola has been law for more than 100 years. The Supreme Court declared in that case:

"* * * the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued."

The Supreme Court simply followed the famous decisions of Judge Story in Harden v. Gordon, Fed.Cas.No.6,047, 2 Mason 541, and Reed v. Canfield, Fed.Cas.No.11,641, 1 Sumn. 195. The contention that the libelant had not actually entered the service of the ship because the actual voyage had not commenced has no merit. He signed articles the day preceding the injury and pursuant to the articles, served the ship on deck duty for some time prior to the injury. The signing of articles and actual entry on duty is a more realistic determination of the beginning of a voyage for purposes of wages and maintenance than the casting off of a vessel from the wharf.

■ Libelant also claims that he is entitled to overtime which he would have earned had he actually gone on the voyage. The Court finds that although he is entitled to his base wages, he is not entitled to overtime. He had contracted for the base wages. Actual earning of overtime was an event which might or might not occur. It depended upon many contingencies. It did not occur in libelant's case. Libelant's base wages were contracted at $241 per month. He is allowed wages for the same period of time for which he is allowed maintenance and at the rate indicated without bonus or overtime. During the course of the voyage libelant's Union negotiated a new contract with the ship operator. Libelant contends that he is entitled to wages at the higher rate provided by this new contract from the date it became effective. The Court does not think so. The duty to pay wages at all stems from the fact that the seaman had signed articles and entered upon service. It was frozen by the understanding in force at the inception of disability and which was sufficient to induce the seaman to enter into the relationship and is not affected by new contracts entered into by others and which the libelant was not in a position to perform had he been a party to the new contract. The respondent is discharged by payment of wages at the contract rate. It is not liable to payment of a rate later contracted by others who physically rendered service which this libelant did not. The decree should be reduced by applicable withholding and social security tax deductions. United States v. Johnson, 9 Cir., 1947, 160 F.2d 789; The City of Avalon, 9 Cir., 156 F.2d 500.

Proctors for libelant will draw findings and decree in accordance with this Memorandum.