Anona DENNING, Appellant,

v.

REPUBLIC NATIONAL BANK BLDG. CO., Appellee.

No. 15140.

Court of Civil Appeals of Texas.

Dallas.

June 25, 1956.

Rehearing Denied Oct. 5, 1956.

890

Carter, Gallagher, Jones & Magee, and Ben T. Warder, Jr., Dallas, for appellant.

Thompson, Knight, Wright & Simmons; Pinkney Grissom, David M. Kendall, Jr.

and Timothy E. Kelley, Dallas, for appellee.

CRAMER, Justice.

Appellant Anona Denning was an employee of a lessee of appellee Republic National Bank Building Company, hereafter called Building Company, and filed this suit against Building Company for damages for personal injuries sustained by her when she slipped and fell on an asphalt tile floor within the area leased to her employer and upon which water wax had been applied by employees of Building Company. The premises in question had been leased by Building Company to Anona Denning's employer, Meyer & Achtschin, for a period of two years. The lease, among other things, provided that lessee was not entitled to sublet or otherwise assign its interest without the consent of Building Company. Without such consent Meyer & Achtschin entered into an agreement with Glore, Forgan & Company, hereafter called Glore Company, whereby Meyer & Achtschin and Glore Company would purchase and manage royalty interests for these others, and under which Meyer & Achtschin and Glore Company agreed to provide office space and personnel. Anona Denning was one of the personnel so furnished. She was not a regular or usual employee of Meyer & Achtschin in their usual operations but was employed solely in connection with the agreement between Meyer & Achtschin and Glore Company. The record discloses that after regular working hours, Building Company employees were waxing the floor leased to Meyer & Achtschin, when Anona Denning, in walking on wet wax, at about 7:00 P.M., slipped and fell. Building Company employees at the time were still in the process of applying the liquid wax.

The jury in answer to special issues found, in substance: (1) That at the time in question Building Company by and through its agents covered the asphalt tile flooring of the file room with liquid wax to such an extent that Anona Denning was afforded no practical means of exit; (2) that such action was negligence; (3) which was a proximate cause of Anona Denning's fall; (4) that the failure of Building Company's employees to warn Anona Denning of the presence of the wet wax on the tile floor was negligence; (5) which was a proximate cause of her fall; (6) that the employees of Building Company failed to provide Anona Denning a safe exit from the premises in question; (7) which failure was negligence; (8) and a proximate cause of her fall; (9) that the employees of Building Company applied an excessive amount of wax to the floor at the time in question; (10) which was a proximate cause of Anona Denning's fall; (11) but that employees of Building Company at the time did not actually know of the presence of Anona Denning on the premises in question; (12) that in the exercise of ordinary care the employees of Building Company should have known of the presence of Anona Denning on the premises; (13) that the action of the employees in commencing waxing operations under the circumstances was negligence; (14) which was a proximate cause of the fall sustained by Anona Denning; (15) that Anona Denning at the time did not fail to keep a proper lookout; (17) she did not know and in the exercise of ordinary care should not have known that a waxing operation was in progress and that there was wet wax on the floor; (20) that at the time and on the occasion in question there was no other means of exit from the Building Company's office which did not have wet wax thereon; (23) Anona Denning's failure to ask for assistance of Building Company employees who were nearby was not negligence; (25) her failure to wait for the wet wax to dry or the waxing operation to be completed before walking on the floor was not negligence; (27) that Anona Denning's failure to call for assistance before crossing the floor was not negligence; (29) that at the time and

on the occasion in question there was no convenient means of exit in which there were convenient handholds for Anona Denning in crossing said floor; (32) that her walking on a floor which she knew was covered with a wet material was not negligence; (34) that at the time and on the occasion in question the condition of the floor was not open and obvious; (35) that Anona Denning did not assume the risk of danger in walking upon said floor on the occasion in question; (36) that the injuries sustained by her were not the result of an unavoidable accident; (37) that Anona Denning at the time acted without knowledge of the danger; (38) at the time and on the occasion in question Anona Denning in the exercise of an intelligent choice did not voluntarily expose herself to the risk of injury; and (39) $32,000 would fairly and reasonably compensate Anona Denning for her physical pain and mental suffering in the past and future, and for reasonable and necessary medical expense in the past and future, as a direct and proximate result of her fall.

After hearing a motion therefor, the court entered a judgment non obstante veredicto. From that judgment this appeal has been duly perfected; appellant Anona Denning here briefing six points of error and Building Company briefing eight counter-points and ten cross-assignments of error.

Points 1 and 2 assert error, in substance: (1) In granting Building Company's motion for judgment n. o. v. and overruling her motion for judgment because as a matter of law Meyer & Achtschin, lessee of Building Company, did not violate the provisions of the lease with reference to subletting the premises and therefore Anona Denning was not an invitee; and (2) in granting Building Company's motion for judgment n. o. v. and overruling her motion for judgment because a fact question existed as to whether or not Meyer & Achtschin sub-

leased a part of the premises, and Building Company having failed to request submission of such issue thereby waived such defense.

Appellee Building, Company counters that motion for judgment n. o. v. was properly granted since, (1) as a matter of law Meyer & Achtschin did violate the lease provisions in subletting, and Anona Denning was at most a licensee; (2) if any fact issues or questions were raised by the evidence as to the status of Anona Denning as a trespasser, licensee, or invitee, Building Company waived the submission of such ultimate issues to the jury and submitted them to the trial court who found that she was not an invitee.

The facts found by the jury, if the evidence supports them, control the judgment of the court and the trial court is not permitted to make a finding on a fact not submitted to the jury and render judgment thereon contrary to that required under the jury's express finding on the only issues submitted to them, absent a motion for an instructed verdict properly based on undisputed evidence for the same reasons on which the court rendered its judgment. Here, in our opinion, the evidence raised a question of fact for the jury on whether or not Anona Denning was an invitee, and the motion for an instructed verdict was properly overruled.

Our Supreme Court in Socony-Vacuum Oil Co. v. Aderhold, 150 Tex. 292, 240 S. W.2d 751, at page 755, appropriate here, stated: "Neither plaintiff nor defendant requested additions to the charge or special issues upon this testimony or objected to the court's failure to charge upon this subject. Since issues concerning the amount of shore employment are actually part of the defense, they are issues raising an independent ground of defense and the burden rests upon the defense to request them. Not having requested issues in this case, the defense waived this independent defense. Rule 279, Texas Rules of Civil Pro-

cedure." To the same effect, see Brown v. Tieman, Tex.Civ.App., 239 S.W.2d 156.

■ The asserted finding by the court that Anona Denning was not an invitee was a finding against, and not in support of, the jury's finding set out above in violation of the rule laid down by our Supreme Court in the Aderhold case, since without the asserted implied finding by the court on such issue, not submitted or requested to be submitted, a judgment contrary to the one here entered would have been proper on the findings to the issues submitted. Points 1 and 2 are sustained.

Point 3 asserts error in granting Building Company's motion for judgment n. o. v. and overruling her motion for judgment because the evidence supports the findings of the jury that Building Company was guilty of negligence proximately causing her injury. Point 3 is countered that the trial court properly sustained such motion because (1) there was no evidence to support the jury's finding that Building Company was guilty of negligence which proximately caused Anona Denning's fall; (2) the undisputed evidence shows the condition of the floor was open, obvious, and known to Anona Denning who appreciated the danger involved in walking across it; and thus Building Company owed no duty to warn her of the presence of the water wax on the floor; (3) under all the circumstances as a matter of law Building Company was under no duty to provide Anona Denning with a means of exit at all times, nor was it under any duty during the waxing operations to use a limited amount of wax; and (4) the uncontroverted evidence showed that the condition of the floor was open and obvious and known to Anona Denning prior to her fall; that she appreciated the dangers involved; that she at the time could have removed herself from danger, but she, in exercising an intelligent choice, elected to continue through the waxed area, and thus Building Company owed her no duty, and she as a matter of law was not entitled to recover. The

record shows that Building Company filed its motion for instructed verdict, asserting that the evidence showed that Anona Denning was a trespasser to whom it owed no duty except to refrain from willfully injuring her. Also that there was no evidence showing negligence. The motion was overruled. Appellant contends that, being an employee of both firms, she was an invitee on the premises and although the file room where she fell was a part of the premises leased by Meyer & Achtschin from Building Company, that Building Company under the lease was obligated to maintain, clean, and wax the floors, and therefore required to exercise reasonable care in performing this duty. The evidence, material here, was in substance that on the night prior to Anona Denning's fall the floor had been cleaned, preparatory to being waxed on the night she fell. She knew, during the day of her fall, that the floor where she later slipped and fell was slippery. She had during the day stepped thereon. Just prior to her fall, in attempting to pass through the file room, she noticed the floor was wet and stopped; and

"Q. * * * And it also after you stopped and looked at the floor, why, it bore the appearance of being slippery? A. Well, I presume it was.

"Q. You were certain it was slippery? A. I was trying to be careful because I didn't want to fall.

"Q. I see. But after you stopped where you did stop and looked and after feeling the material, whatever it was under your feet, and looking at it you were certain in your mind that whatever you were walking on was a slippery material? A. Yes, sir.

"Q. And you were certain in your mind that it would be dangerous to walk upon that type of material which was on that floor? A. Yes, sir."

Also that in going out she had to go through the file room; that being the only way out which was available to her. Anona

Denning's witness, Miss Hodge, testified that some ten or fifteen minutes before Miss Denning's fall she (Miss Hodge) had walked out by aisles 3 and 5 but could not remember whether they were wet; that she continued past aisle 2 and past the filing cabinets and table separating aisle 2 from aisle 1, turned the corner on aisle 1 on the wet wax, and after proceeding a short distance on aisle 1, nearly fell. That she walked very slowly and carefully; that she did not call out for help or go to the phone and ask assistance in crossing the wet wax. At the time the lights were on in the file room.

The record also shows that the wet wax used here normally dried in from 10 to 15 minutes, though it sometimes took longer under certain weather conditions.

The employee who waxed the floor testified, in substance: That he had been waxing about two hours when he heard the typewriter and just kept on waxing after that. If someone was in the offices on the southwest side of the building there was no way for them to leave except to walk through the file room. That two ladies came out of the offices; the one before Miss Denning nearly fell; and then a little later Miss Denning. The first lady came from the southwest corner of the file room and at this time he had already waxed aisle 3 and aisle 2, and was working around the doorway. The first lady walked down aisle 3. When he first saw Miss Denning he was about halfway down aisle 1 and she was coming around the corner. She fell at the corner where he first saw her. It was wet where Miss Denning fell and he supposed she slipped, since when he looked up she was falling. She said she hurt her wrist and he picked her up.

■ Under the above record we have reached the conclusion that the evidence was sufficient to make a question of fact for the jury, and required that the issues so raised be submitted to the jury; 33 Tex. Law Review 21, "Injuries from Open and Obvious Conditions," subd. "Appreciation of Some Danger but not All." Point 3 is sustained.

Points 4 and 5, briefed together, assert error in granting the motion for judgment n.o.v. and overruling her motion for judgment because (4) as a matter of law the doctrine of assumed risk or volenti non fit injuria was not available to Building Company as a defense in this case; (5) the evidence supports the findings of the jury concerning the defense of assumed risk and volenti non fit injuria. Appellee counters that the trial court properly sustained the motion because the uncontroverted evidence showed, as a matter of law, (7) that Anona Denning voluntarily exposed herself to known and appreciated danger; (8) that she was guilty of negligence which proximately caused her fall and the resulting injuries.

■■ The jury here found that the condition of the floor at the time was not open and obvious and that Anona Denning did not assume the risk and danger in walking thereon at the time. Under the authorities, before Anona Denning is barred from a recovery she should, and must have fully realized and appreciated the danger, and thereafter voluntarily exposed herself thereto after and intelligent choice. Here, in our opinion, the evidence referred to above, supported the jury's finding that she did not, in the exercise of a voluntary choice, so expose herself to the risk here involved. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172; McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357. See also Note on McKee v. Patterson, 33 Tex. Law Review 1, and the authorities and conclusions on page 22; and Note on the Blanks case in 29 Texas Law Review 268. Points 4 and 5 are sustained.

■ Point 6 asserts error in granting motion for judgment n.o.v. and overruling appellant's motion for judgment because

the evidence supports the finding that she was not guilty of negligence; countered by Building Company that her motion was properly overruled since the uncontroverted evidence showed, as a matter of law, (8) that Anona Denning was guilty of negligence which proximately caused her fall and resulting injuries. Building Company is correct in stating the rule that the owner or occupant does not owe to an invitee the duty to protect her against dangerous conditions that: (1) are open and obvious; (2) are reasonably apparent; or (3) are as well known to the person injured as to the owner or occupant. However, as we have above pointed out under points 4 and 5, the rule is that Anona Denning must have fully realized and appreciated the danger, before she exposed herself, in order to be barred from recovery. Too, the fact that Anona Denning was not the first person to observe and misjudge the condition of the floor, so far as the possibility of a fall was concerned, and proceeded to go across it and fell, and the knowledge of that fact by the employee waxing the floor, was a circumstance which could be considered by the jury. There was a question of fact for the jury under all the evidence here. Point 4 is sustained.

█ Appellee Building Company has filed ten cross-assignments of error: (1) Asserts error in the trial court's permitting Anona Denning's attorney to infer to the jury that the Republic National Bank was the true party in interest, which was harmful and induced prejudice in the jury. Appellant counters that such action was not error. The record shows that the first witness was asked the question: "By whom are you employed?" and he answered "The Republic National Bank." The record shows that this witness was employed by the Republic National Bank but was also employed by the Building Company; also that Fred F. Florence was the President of both Companies. We see no error or prejudice to Building Company in such

matter; but if it was error, it was harmless. Cross-point 1 is overruled.

Cross-points 2, 3, and 4 briefed together assert error: (2) In submitting issues 1 through 14 because there was no evidence to support same; (3) and the answers to issues 1 through 14 were against the great weight and preponderance of the evidence; and (4) in overruling Building Company's motion and amended motion for instructed verdict because there was no evidence of any negligence on part of Building Company.

What we have stated under point 3 is applicable here, and for the reasons there stated counter-points 2, 3, and 4 are overruled.

Cross-points 5 and 6 assert: (5) Jury findings 15 through 38 are against the great weight and preponderance of the evidence; (6) error in overruling Building Company's motion and amended motion for instructed verdict because the evidence as a matter of law showed that Anona Denning was guilty of contributory negligence and assumed the risk of walking on the newly waxed floor. For the reasons stated above under our discussion of points 4 and 5, cross-points 5 and 6 must be overruled.

Cross-point 7 asserts error in refusing to submit its requested issues 3 and 4; countered that the court correctly refused such issues. Building Company requested issues 3 and 4, which were:

"Requested Special Issue No. 3: Do you find from a preponderance of the evidence that at the time and on the occasion in question the plaintiff Anona Denning failed to use proper methods of safety or safe walking in proceeding across a floor which she knew had wet material thereon? Answer 'Yes' or 'No.' Answer: ———."

"Requested Special Issue No. 4: Do you find from a preponderance of the evidence that such failure, if you have

**896**

so found in answer to the preceding Special Issue, was a proximate cause of plaintiff's injuries, if any? Answer 'Yes' or 'No.' Answer: ———."

Issue 32, hereinabove summarized, was in full: "Do you find from a preponderance of the evidence that the walking by the plaintiff Anona Denning upon a floor which she knew was covered with a wet material was negligence as that term is defined herein?" To this issue the jury answered "No." Issue 33 on proximate cause was conditioned on an affirmative answer to issue 32.

■ Under the record, the trial court did not err in refusing to submit the requested issues. Cross-assignment of error No. 7 is overruled.

Cross-assignments of error 8, 9, and 10 assert error in submitting to the jury issue 39: (8) Because there was no evidence of any future diminished earning capacity or Doctor's bills; (9) because there was no evidence of mental suffering on part of Anona Denning either in the past or in the future; and (10) the answer of the jury to special issue 39 awarding her damages in the amount of $32,000 was grossly excessive and was dictated by passion and prejudice. Anona Denning countered that the answer to issue 39 was supported by the evidence.

The evidence supporting the jury's answer to issue 39, finding $32,000 in damages suffered by Anona Denning, is as follows: Appellant's witness Dr. Sigler, an orthopedic surgeon, testified in substance that he first saw Miss Denning in St. Paul's Hospital, and diagnosed her condition as fracture of the lower portion of the ulna and fracture of the lower portion of the radius, which was comminuted, sprain to her back and left shoulder; the radius and ulna are the two main bones in the forearm; the radius is the bone leading to the thumb, the ulna the smaller bone on the opposite side, leading to the little finger; that "She was carried to surgery where under general anesthesia several attempts were made to reduce this fracture, but each time the bones were aligned the distal fragment slipped, either one way or to the other, to where the alignment would be unsatisfactory; therefore, it was decided to use skeletal traction, a wire was placed through this metacarpal bone or through the thumb, this portion of the thumb (indicating), and traction was applied to that so that the distal fragment was pulled down and into alignment; in other words, alignment couldn't be achieved by the ordinary method of reduction." She was put in traction, and about 3½ weeks later in a cast for 2½ months, and then exercises, physical therapy, hot soaks, pain medicine; that there is little more medically that can be done for her; she has 40 to 50% limitation of motion, in all directions, in her wrist. She was in the hospital for about 3½ or 4 weeks. That such injuries resulted in discomfort, pain and suffering and she has reached her maximum recovery now (time of the trial); he does not think the future holds much hope for her; that the limitation of motion is permanent and she will in the future require physical therapy at a cost of $75 per year and she is apt to need such physical therapy for the remainder of her life; that typing with her hands palms down ("pronation and supination"), and with the limitation of motion he found, she would throw her left elbow out in the performance of her duties as a typist, which is calculated, over a long period of time, to cause some pain within the left elbow and shoulder. He also testified that traumatic arthritis is a possibility and is usually aggravated by changes in the weather,—cold or damp; that the joint would be stiff and sore; that Anona Denning has sustained 50% permanent loss of the use of her left wrist; she has pain, swelling. and limitation of motion, in cold weather, which he calls traumatic arthritis; that once traumatic arthritis sets up within a joint, his opinion is that it would stay with the patient during the remainder of her life.

Anona Denning testified that she has done substantial secretarial work and typing since leaving school; that she cannot now rotate her left hand all the way to the right; cannot rotate her left hand without moving her elbow; cannot twist her left hand so that the palm turns upward; it causes pain to turn her left hand up as far as she can turn it, and on extreme motion; she lacks about one-third of the way of being able to turn her hand all the way upward; she can make a fist with her right hand, but cannot make a fist with the palm of her left hand turned down; her left wrist is smaller than it was; in typing she cannot get the movement of her fingers to conform with the right hand; she has to slow down her right hand to conform to the left hand; she has difficulty in the rotation of her left hand so as to get the palm down; has to adjust her body when she does typing, which strains her shoulder; that before the accident she was considered an unusually fast and accurate typist, typing over 75 words per minute; but since the injury her speed has reduced noticeably; she has pain and discomfort in the left wrist now; in damp or cold weather her hand gets stiffer and "my joints hurt"; they stiffen more in cold weather.

Anona Denning's supervisor on her job testified that she (Anona Denning) received $275 per month, plus $25 per month bonus; that before her accident she could type from 75 to 90 words per minute, and since she came back to work between 45 to 55 words per minute, depending on the copy, and that her work is not as accurate as before.

Appellant Denning's attorneys in her brief assert that the jury could conclude from such evidence that her capacity to earn money as a typist has been diminished by 50% per month, amounting to $150 per month for her life expectancy, 23.65 years; or a total of $42,570, and a loss of earning capacity of $32,000; that the evidence also shows hospital bills totaling $628.65, physical therapy treatments $75; Dr. Sigler

$500; that there is also evidence of future necessity of medical expenses of $75 per year for 23.65 years, totaling $1,773.75; that an award of $2.00 per day for her life expectancy would approximate $17,000; $32,400 for past and future diminished earning capacity; and that the record would support damages of $52,377.40.

The record also shows that Anona Denning's employer has paid her salary since the accident.

Anona Denning's evidence supporting the verdict and damages is controverted and asserted to be grossly excessive by Building Company; stating that "The evidence would certainly support a judgment for no more than $5,000.00." The most that is possibly shown by the record is that appellant has incurred a $500 doctor bill, in addition to which she may incur expenses of $50 to $75 per year; that assuming, for the sake of argument, that appellant had a life expectancy of twenty years, the maximum future medical expense she might have would amount to $1,500, or a total expense of $2,000; that to allow, then, $30,000 as damages to a woman who has at most 40 to 50% limitation in motion of her wrist, some pain, although not apparently extreme or constant, with no diminished earning capacity, and only a possibility of future arthritic changes, "is obviously unjustified"; and asserts that the verdict resulted from passion and prejudice of the jury.

After a full study of the evidence and the record as a whole, we are of the opinion that the verdict is excessive and that the evidence recited above justifies a verdict of not over $20,000. If remittitur of all sums in excess of $20,000 is filed within fifteen days after this date, the judgment of the trial court will be reversed and judgment will be here rendered in favor of appellant Anona Denning for the sum of $20,000, plus interest and costs in the trial court; otherwise the judgment will

be reversed and cause remanded for a new trial. 3–B Tex.Jur. 555–7, Appeal and Error, secs. 992, 993.

Reversed and rendered on condition of remittitur.

## On Rehearing

YOUNG, Justice.

 In original opinion points 1 and 2 of appellant are each sustained—an inconsistency. Whether plaintiff at time of injury was an invitee of defendant cannot simultaneously be both a question of law and one of fact. And if a question of fact be involved, as assumed by point 2, same was a material element of *plaintiff's* cause of action and therefore not waived by *defendant's* failure to request its submission.

 It is appellee's contention that *plaintiff* at time of injury was an employee of Glore, Forgan & Company-Meyer & Achtschin, a joint venture, to which enterprise Meyer & Achtschin, defendant's lessee, had sublet without its consent a part of the premises, thereby violating paragraph 4 of the lease prohibiting subletting without consent of lessor; and that plaintiff, being an employee of a business unlawfully on the premises, was no more than a trespasser to whom defendant owed no duty except not to wilfully injure her. The facts concerning the status of plaintiff on the premises are not disputed, and therefore readily determinable as a matter of law. Meyer & Achtschin, petroleum engineering consultants and co-partners, had leased space in defendant's building (3,496 sq. ft.) beginning February 1, 1954, for a two-year term. In a written contract dated March

2, 1955, certain individuals designated as "owners" had employed Meyer & Achtschin and Glore, Forgan & Company as their agents to purchase royalty interests up to a subscribed amount; said agents to furnish office facilities and personnel, and as a part consideration for services rendered these agents were to receive 15% of the money so invested as administrative expense. Certain of the office space was allocated to the venture, so-called, with that part of the rental charged to administrative expense, as was also the salary of plaintiff. Manifestly, the foregoing arrangement constituted no subletting of the premises by Meyer & Achtschin to Glore, Forgan & Company within meaning of defendant's lease. Under terms of this March 1955 agreement, the latter simply became a partner along with lessee in performance of required duties as joint agents. "A subletting creates a new estate, dependent upon, or carved out of, but distinct from, the original leasehold. * * * It has been held that permitting a third person to enter into the joint occupation of the premises with the lessee is not necessarily a subletting, and that the fact that a lessee conducting a business on the demised premises takes a *third person into partnership with him and thus lets such third person into joint possession of the premises is not a breach of a covenant against subletting.*" 32 A.J., sec. 393, pp. 331, 332. (Emphasis mine.) See also Markowitz v. Greenwall Theatrical Circuit Co., Tex. Civ.App., 75 S.W. 74, 76, reversed on other grounds, 97 Tex. 479, 79 S.W. 1069, 65 L.R.A. 302.

Otherwise, I concur in the conclusions reached in original opinion of affirmance on condition of remittitur.