Freedom ARCHEY, Appellant,

v.

NEDERLANDSCH – AMERIKAANSCHE STOOMVAART MAATSCHAPPIJ (HOLLAND–AMERICA LINE), Appellee.

No. 7370.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 13, 1962.

Rehearing Denied March 13, 1962.

Mandell & Wright, Houston, for appellant.

Fulbright, Crooker, Freeman, Bates & Jaworski, Ed Bluestein, Jr., S. G. Kolius, Houston, for appellee.

CHADICK, Chief Justice.

This action for damages was brought by stevedore injured while storing cargo in a wharfed vessel. A take nothing judgment is affirmed.

The appellant, Freedom Archey, brought this suit as plaintiff against the Nederlandsch-Amerikaansche Stoomvaart Maatschappij (Holland-America Line) as defendant in a district court of Harris County, to recover damages for an injury received while working on board the S. S. Alblasserdyk, the defendant's vessel engaged in the transportation of cargo in interstate and foreign commerce. Archey was not an employee of the defendant, hereafter referred to as appellee or Holland-America Line, nor a member of the vessel's crew. Holland-America Line contracted with a firm named Port Arthur Stevedores to stow cargo on the vessel. In accordance with customary practice the stevedoring firm called upon the longshoremen's union for stevedores to load the vessel.

A longshoreman gang, including Archey, was dispatched to perform the work. Archey was employed and assigned with seven others to load steel drums filled with oil in the No. 2 hatch of the vessel. Hatch covers were removed and the ship's booms lowered the drums into the hatch. The drums were released from the boom slings and moved to the deck storage area in the ship's hold by the longshoremen. A drum would be rolled on the deck floor to a point near the place it was to be upended and stowed. At this point two men would raise the drum on its rim to a balanced position; one man would then maneuver it into place while the other returned for another drum. Raising the barrel from its side to stand on its end is called "heading" the drum by stevedores.

On the morning of September 19, 1956, before the stowing operation began, dunnage (planks of rough wood used as flooring) was laid on the steel deck floor. To properly serve its purpose dunnage must be in good condition, laid straight and smooth to make a secure footing for the stowed cargo as well as for the men working on it. One of the longshoremen laid some dunnage that he found in the hatch, and Archey with another of his fellow workers began stowing the drums.

After the elapse of some time while doing this work Archey and his work partner were heading a two to three hundred pound drum when Archey's partner released his hold on the drum to go back for another. The drum suddenly fell over as Archey attempted to maneuver it, jerking him downward and causing injury. Archey was hospitalized and treated.

Archey's pleading in the trial court alleged that the negligence of the ship line, the unseaworthiness of the vessel, or both, proximately caused his injuries. The jury answered special issues establishing the following facts: (1) Warped dunnage was used to floor the deck where Archey worked at the time of his injury; (2) the warped condition of the dunnage was not the proximate cause of Archey's injury; (3) Holland-America furnished unwarped dunnage for the storage deck floor; (6) the length of the dunnage furnished was sufficient for dunnage purposes; (8) Archey could, with

safety, work upon dunnage of the length furnished; (11) the deck flooring where Archey was working made the area an unsafe place to work at the time of his injury; (12) working on the unsafe floor was not the proximate cause of Archey's injury; (13) Archey did not exercise reasonable care to ascertain that the steel drum was in a position to be safely headed at the time of his injury; (14) the proximate cause of the accident in which Archey was injured was failure to use ordinary care to ascertain the steel drum he was stowing was in a position to be safely headed; (15) Archey removed his hands from the drum as soon as a person in the exercise of ordinary care would have done so; (17) Archey was not stowing a drum on warped dunnage at the time the accident occurred; (20) Archey failed to use ordinary care to procure other dunnage to be used in stowing the drums; (21) the failure to procure other dunnage was not the proximate cause of the accident; (22) the conduct of Archey was 50% the proximate cause of the accident. The jury answered all issues the court's instruction required to be answered. Only the numbers of the issues answered are indicated. A take nothing judgment was entered on the basis of the jury's answers.

The appellant's brief finds no fault with the submission of the negligence theory of the case or to jury answers to issues propounded thereunder. The attack on the judgment is directed to the submission of the action on the unseaworthiness theory. Briefed as error is the trial judge's action in refusing after timely written request to instruct the jury as follows:

"You are instructed that the applicable law imposes an absolute duty upon Defendant to furnish dunnage in the hatch where it was to be used that was reasonably suitable for the purpose of stowing the steel drums with safety. Defendant cannot delegate such duty to any stevedoring company nor can it contract such duty away to any other party."

The appellant's somewhat informal and unorthodox brief marshals in support of his complaint four general lines of argument. The condensed version that follows loses much of the intricate quality and power of the argument but space limitation prohibits more detail. In general outline the argument is that the requested instruction should have been given because:

(1) The substantive and procedural rights of the appellant must be determined by maritime tort law; and as a corollary, the procedural rules of state courts cannot be invoked to deprive the appellant of substantive rights and remedies accorded him by maritime tort law or any applicable Federal enactment.

(2) The definition of "proximate cause" given in the charge to the jury, to-wit,

"By the term 'proximate cause' as used in this charge is meant a cause which in a natural and continued sequence produces an event and without which the event would not have occurred, *and to be a proximate cause of an event it should have been reasonably anticipated and foreseen by a person of ordinary care and prudence in the exercise of ordinary care that the event or some similar event would occur as a natural and probable consequence.* There may be more than one proximate cause,"

contained the language emphasized, thus, as a prerequisite to recovery under the seaworthiness theory, imposing more onerous conditions than the law prescribes absent the requested instruction.

(3) Admission of evidence that Holland-America Line contracted with the stevedoring firm to supply and lay dunnage was prejudicial, as admission thereof allowed the jury to reason or assume that duty in this respect shifted from the ship line to the stevedoring firm, in the absence of the requested instruction.

(4) The right of recovery under the doctrine of unseaworthiness was effectively

denied the appellant by refusal to give the requested instruction.

■ The first line of argument as a legal proposition requires but little discussion other than to mention that no rule of procedure associated alone with maritime tort actions or a Federal enactment involved in this case is claimed to have been violated. Both parties seem to be in agreement that as a general statement of law applicable to cases of this nature the argument is correct. Such case as Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143, McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272; Arnold v. Panhandle & Santa Fe Railway Co., 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 and Givens v. Missouri-Kansas-Texas R. Co. of Texas, 5 Cir., 195 F.2d 225, are among those cited by the appellant. By this concession it is not to be understood that because Archey's actionable rights are to be so measured the requested instruction was necessary to protect them.

■ To reverse the judgment on such ground, Archey must show that assertion of some substantive or procedural right was not allowed in the State court. In this connection the record shows Archey chose the State court as the forum for the trial of his claim. When he made such choice he subjected himself to the State courts' practice insofar as it did not deprive him of rights or remedies accorded by maritime tort law or some Federal enactment. The principle is stated in a Jones Act Case (46 U.S.C.A. § 688), Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, where it is said:

"* * * By the institution of his suit petitioner invoked the jurisdiction of the state courts and the suit should be tried as any other suit for damages for negligence is tried in the state courts, provided there is compliance with the specific requirements of the Federal Statutes, that is to say, that assumed risk and negligence of fellow servants are not to be defenses and contributory negligence not a complete defense, and that the injured seaman or employee is entitled to trial by jury."

See also: Socony-Vacuum Oil Co. v. Aderhold, 150 Tex. 292; 240 S.W.2d 751.

The second line of argument reflects no error when considered in the light of the record. It has previously been noticed that Archey plead an action based in part on Holland-America Line's negligence as the proximate cause of his injury. To sustain this theory the burden was on Archey to prove the ship line's negligence was the proximate cause of his injury. His brief makes no suggestion that proximate cause was not a fact issue, nor that the submission of a special issue thereon was not required by the proof in the case and a necessary and appropriate issue to be submitted. As the record stands, a special issue on proximate cause was pertinent under the pleadings and proof, and the explanatory instruction defining the term was proper insofar as the negligence theory of Archey's case was concerned. Nevertheless, Archey's contention is that because of the explanatory instruction, the jury "* * * had to consider and determine whether the defendant [Holland-America Lines] as a person of ordinary care could have reasonably foreseen that the event [mishap] or some similar event would occur as a natural consequence of the kind of dunnage the contracting stevedores might use. * * * [and] was compelled to consider the elements of notice, foreseeability and exercise of due care when answering" the issues of proximate cause as the issues affected his right to recover under the doctrine of unseaworthiness.

The vice of the definition of proximate cause, so his argument runs, would have been removed by instructing the jury that Holland-America Lines had an absolute non-delegable duty to furnish dunnage in the hatch where it was to be used, reasonably suitable for the purpose of stowing the steel drums with safety. The point of

the argument being that the jury with knowledge of the Holland-America Line's duty would not have been misled by improper elements of the proximate cause definition, and certain evidence yet to be discussed, and led to assume that Holland-America Lines discharged its duty and responsibility when it contracted with Port Arthur stevedores to stow the drums. Presumably, the argument charges, the jury could and would have, but for the proximate cause definition and the evidence alluded to, disregarded and overridden the instruction on proximate cause, or at least the objectionable elements of it, and applied the law of the requested instruction.

■ If the definition of proximate cause as given by the court contains elements incompatible with the requested instruction, or if Archey was not required to prove the warped condition of the dunnage (special issue 2) or the unsafe floor (special issue 12) was the proximate cause of his injury as a pre-requisite to recovery under the doctrine of unseaworthiness, (it is unnecessary to decide either proposition under the record presented), the procedure Archey advocates would permit the jury to choose the law it would follow in making a determination of the facts. Allowing the jury such latitude would conflict with and infringe upon the trial judge's duty to instruct the jury as to the law governing it in the performance of its fact finding function and the jury's duty to be guided by such instruction. Obviously, such procedure is contrary to the established practice in Texas. A purpose of special issues is to eliminate the need for instruction upon the law.

■ Archey could have had the benefit of every right afforded him by the unseaworthiness doctrine by following the rules of practice. These rules allow him time to call the trial judge's attention to errors or deficiencies in the charge. Rule 272, Vernon's Ann.Civ.St. He was authorized by Rule 273 to request such issues, instructions, explanations and definitions deemed

controlling or appropriate to his case. But failure to timely object to the definition of proximate cause or make any request for a definition in other or different form constitutes a waiver of error in it on appeal. A. A. A. Air Conditioning & Mfg. Corporation of Texas v. Barr, Tex.Civ.App., 186 S.W.2d 825, wr. ref.; Punch v. Gerlach, 153 Tex. 39, 263 S.W.2d 770; Hicks v. Fredericks, Tex.Civ.App., 286 S.W.2d 315, n. w. h.; Bell v. Missouri-Kansas-Texas Railroad Company of Texas, Tex.Civ. App., 334 S.W.2d 513, n. r. e.; Rule 274. A party's voluntary relinquishment of a right is not the equivalent of a disallowance of it by the court.

■■ Rule 277 authorizes explanations and instructions in the nature of a general charge when necessary to enable a jury to pass upon and render a verdict upon the issues. Instruction in the nature of a general charge is exceptional, and as indicated is to be given only when the necessity therefor exists. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481. How knowledge of the legal obligation of Holland-America Line's non-delegable duty to furnish suitable dunnage would have aided the jury in determining from the facts before it that the dunnage used was or was not a proximate cause of Archey's injury is not apparent. See Bell v. Missouri-Kansas-Texas Railroad Company of Texas, Tex.Civ.App., 334 S.W.2d 513, N.R.E.; Texas Bus Lines v. Whatley, Tex.Civ.App., 210 S.W.2d 626, N.R.E.; Mosby v. Texas & Pacific Ry. Co., Tex.Civ.App., 191 S.W. 2d 55, N.W.H.; Tripp v. Watson, Tex.Civ. App., 235 S.W.2d 677, N.R.E. Refusal of the requested instruction was not error.

The third line of argument does not sustain Archey's assertion of error for basically similar reasons as those just discussed. The appellant did not object to the testimony, or request its withdrawal from the jury or its limitation to particular purposes, or otherwise timely move to prevent its improper admission or use. Instead, after its admission he asked for an instruc-

tion embodying the law as to Holland-America Line's duty to furnish suitable dunnage. That the jury might have been influenced by the requested instruction in evaluating the evidence before it is purely a matter of conjecture. Intrinsically, knowledge of the legal duty of the ship line would not aid in determining whether the dunnage used or the unsafe floor was or was not the proximate cause of the mishap, or that the ship line did or did not supply dunnage that was not warped (Special Issue 3). If the evidence was inadmissible, objection should have been made, and if overruled assigned as error and the point presented here for review, Rules 324, 374, and 418. Giving the requested instruction was not a substitute for following the rules.

The fourth line of argument is largely a re-assertion of the preceding three. No error is shown. In addition to what has previously been said the records show that issues of fact were submitted by the trial court which, if found to exist by the jury, would support a verdict for appellant under the doctrine of unseaworthiness. The form of issues submitted did not by implication or otherwise relieve Holland-America Lines from any duty imposed on it by the doctrine. The jury was simply asked to find facts and did so. As the appellant's theory is understood, he concedes that he was obligated to prove the unseaworthy condition of the vessel was the proximate cause of his injury as a prerequisite to recovery. So understanding it may be said that had the jury answered special issues 2 and 12 in the affirmative, rather than in the negative the jury findings would have supported a judgment for Archey. Under his own theory of the case on appeal the submission of issues pertaining to unseaworthiness in the trial court was adequate and his real complaint is to their form. As shown, he waived his complaint.

No reversible error being shown, it becomes the duty of this court to affirm the judgment of the trial court and it is so ordered.